Benjamin S. Lang and the St. Louis Union Trust Company as Trustees under the Will of Hubert P. Taussig, Deceased, v. Amadee J. Taussig et al., Respondents, The First Unitarian Church of St. Louis, Appellant.—No. 39610.—192 S. W. (2d) 407.

Division One, February 11, 1946.

*J. Hugo Grimm* for appellant The First Unitarian Church of St. Louis; *George T. Priest* of counsel.

*Charles H. Luecking* for respondents Amadee J. Taussig, Gladys T. Lang and Anna T. Stout.

*Thomas S. McPheeters* for respondents Benjamin S. Lang and St. Louis Union Trust Company, Trustees; *Bryan, Cave, McPheeters & McRoberts* of counsel.

BRADLEY, C.—This is the second appeal in this cause. See Lang et al. v. Taussig et al. (Mo. Sup.), 180 S. W. (2d) 698. The cause was brought by the respondent trustees to construe the will of Hubert P. Taussig, deceased. The will was executed May 25, 1928. One of the principal questions involved on the prior appeal was the validity of two $10,000 bequests, one to the First Unitarian Church of St. Louis, appellant here, and the other to Washington University.

The testator died December 21, 1930. He was survived by his widow, Amanda J. Taussig, and a son, Amadee J. Taussig, and two daughters, Gladys T. Lang and Anna T. Stout. All these children were parties and are respondents here. The widow died November 25, 1937. At the time of the execution of the will, the testator owned 211 shares of stock of Western Manufacturers Building Company. Other mem-

bers of the family owned 118 shares of stock of this company. Testator's 211 shares and the 118 shares were, on May 25, 1928, date of execution of the will, placed in trust with testator as trustee for the purpose of sale. In the third paragraph of his will testator devised and bequeathed the residue of his estate to the trustees, Benjamin S. Lang and the St. Louis Union Trust Company, respondents here. Paragraph (e), and a portion of paragraph (f) of the will, provided:

"(e) At the death of my wife, or when my daughter, Anna, shall have reached the age of forty years, or if she shall survive my wife and die before reaching said age, then at her death, whichever event shall last occur, the trustees shall distribute all the assets then comprising the trust estate, except the shares of the Western Manufacturers Building Company, in equal shares per stirpes, among my three children, Gladys T. Lang, Amadee J. Taussig and Anna A. Taussig, and the descendants of any of them who may have died leaving one or more descendants then living.

"The shares of stock of the Western Manufacturers Building Company are subject to the provisions of a trust agreement. If they shall have been sold by the trustee thereunder, the proceeds thereof shall be divided as provided in paragraph (e) hereof, as soon as the said proceeds shall have been received, not earlier than the time stipulated in said paragraph (e). If they shall not be sold pursuant to said trust agreement, they shall be distributed amongst my descendants as provided in said paragraph (e) as soon as practicable after they are free from the power of sale given by said trust agreement and after my said daughter, Anna, shall have reached the age of forty (40) years, after having reserved sufficient to yield enough to pay the annuities of those persons mentioned in paragraph (c) hereof still living.

"(f) If at the time of my death I shall have disposed of my shares of stock in said Western Manufacturers Building Company, or if I have not, then as soon as the trustees shall have disposed of them they shall distribute to the trustees of the Church of the Unity in the City of St. Louis the sum of ten thousand dollars ($10,000.00), and to the Washington University of said City the sum of ten thousand dollars ($10,000.00), which last named amount shall be held by said University as a separate trust fund, and the income accruing from its investments shall be used in assisting needy students in the engineering department.

"After having paid said sums amounting to twenty thousand dollars ($20,000.00), and after reserving a sufficient fund to enable them to pay the annuities provided for in paragraph (c) hereof out of the income therefrom when invested, the trustees shall distribute the remainder of the proceeds of the sale of said shares of stock among my children and their descendants as hereinabove set out . . ."

The trial court, at the first trial, held that the provision for the University and the Church in paragraph (f) was in conflict with

paragraph (e), that is, paragraph (f) did "not sufficiently express an intention on the part of the testator to nullify or cut down the estate devised for the benefit of the testator's children under paragraph (e), and is therefore not effective." The University and the Church appealed [180 S. W. (2d) 698].

Other issues on the first appeal, in addition to the validity of the bequests to the University and the Church, were (1) whether the trustees should hold the 211 shares of stock until November 25, 1947, ten years after the death of testator's wife, if they were unable to dispose of the stock before that date; (2) whether the payment of the bequests to the University and the Church was limited to payment out of the proceeds of the sale of the 211 shares of stock and, if the University and the Church had no interest in the assets of the estate other than the shares of stock for the satisfaction of their bequests, then what action should be taken by the testamentary trustees in regard to other assets of the trust estate, and also in regard to the 211 shares of stock; and (3) whether, if the 211 shares of stock are not sold by November 25, 1947, the bequests to the University and the Church would lapse.

The stock sale trust agreement provided that if the testator as trustee in the agreement did not sell the stock prior to his death, then his executor could sell at any time within 10 years after the death of the wife, as it turned out to mean.

On the first appeal it was held: (1) That the bequests to the University and the Church were valid; (2) that these bequests did not lapse if the stock was not sold by November 25, 1947; (3) that the trustees, if they did not sell the stock prior to November 25, 1947, could, as soon thereafter as practicable, sell the stock and distribute the proceeds as provided in paragraph (f), or the trustees, in their discretion, deeming it to be to the advantage of those interested in the estate, could, as soon as practicable after November 25, 1947, distribute the testator's stock in kind, having sold sufficient thereof to satisfy the bequests to the University and the Church; and (4) that the trustees had no power to distribute the testator's stock or the proceeds of a sale thereof without satisfying the charge thereon of the bequests to the University and the Church. And the opinion goes on to say [180 S. W. (2d), l. c. 703]: "These conclusions give effect to both of the apparently conflicting provisions of the will in harmony with the real intent of the testator, as we believe it to have been, as disclosed by the language of the whole will. . . . The decree and judgment of the trial court should be reversed and the cause remanded with directions to enter a decree in accordance with this opinion."

When the cause reached the trial court after the remand, said court set aside its former decree and entered a decree which was deemed by the court to be in accordance with the opinion by this court. The

decree entered was satisfactory to all concerned except the Church. The new decree, among other things, provided that Amadee J. Taussig, Gladys T. Lang and Anna T. Stout, children of testator, or their respective heirs, executors, administrators and assigns, would be "entitled to receive from the trustees any dividend or dividends that may be received by the trustees on account of such 211 shares of Western Manufacturers Building Company stock, but only to the extent that such dividends are paid in the regular course of business by the company out of its net earnings or earned surplus; that as to any dividends, if any, that may be declared and paid by ▇▇▇ said Western Manufacturers Building Company which are not paid in the regular course of business and which are not paid out of the Company's earned surplus or net earnings, shall be paid over to said University and said Church in equal shares and to be applied and credited on the gifts or bequests to said University and said Church.''

· The Church objected to the provision of the decree as to payment of dividends to the children; contended that all dividends paid to the trustees on the stock of the testator should be held until the stock was sold, and then if any part of said dividends were needed to pay in full the bequests to the University and the Church, such should be so applied, and the remainder, if any, distributed to the three children.

. The Church sought to have the new decree modified to conform to its contention as to dividends and also the Church filed a motion for allowance to it of "a reasonable sum" for attorney's fee to be paid "out of the assets" of the estate. The court declined to modify the decree and denied allowance of attorney's fee, and the Church appealed May 15, 1945.

▇▇ It is quite apparent that we do not have jurisdiction of this appeal. The only questions involved on the present appeal are on the validity of the dividend provision of the decree to the children and on the refusal to allow an attorney's fee. Jurisdiction of the first appeal was in the supreme court because the validity of the two $10,000 bequests was an issue, that is, the amount in dispute was in excess of $7500. Art. 5, Sec. 3, Constitution, 1945. Counsel for appellant, the Church, in the brief, says that jurisdiction of the appeal is in the supreme court because this court, on the former appeal, reversed the judgment and directed entry of a decree in accordance with the opinion rendered, and that "the present appeal is based upon the contention that the decree as entered is not in conformity with the opinion of this court in that it does not require the testamentary trustees to hold the income of said 211 shares of stock of the Western Manufacturers' Building Company until the sale of said stock to meet the contingency of the sale of said stock not producing a sufficient amount to pay the legacies of $10,000.00 each to the First Unitarian Church and the Washington University in full." There was no

934

direction in the opinion about the dividends. Also, appellant says in the brief that the appeal lies to the supreme court "for the further reason that the circuit court erroneously provided in its decree that the attorneys for all parties to the suit to construe the Taussig will must look to their respective clients for payment on account of their services." There was nothing in the opinion about attorney fees. Therefore, no question of failure to comply with the mandate of this court could possibly be presented on the record in this case.

Art. 5, Sec. 3, Constitution, fixes the appellate jurisdiction of the supreme court as follows: "The supreme court shall have exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the United States or of this state, the validity of a treaty or statute of the United States, or any authority exercised under the laws of the United States, the construction of the revenue laws of this state, the title to any office under this state, the title to real estate, in all civil cases where the state or any county or other political subdivision of the state or any state officer as such is a party, in all cases of felony, in other classes of cases provided by law and until otherwise provided by law, in all cases where the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars."

There could be no possible constitutional ground upon which jurisdiction of this appeal would lie to the supreme court except on the amount in dispute. The only amount in dispute is whatever sum the dividends involved may amount to, plus whatever attorney's fee, if any, may be allowed. There is no claim that these combined would exceed $7500. When appellate jurisdiction of the supreme court is invoked on the ground that the amount in dispute, exclusive of costs, is in excess of $7500, such must affirmatively appear from the record. Frank Schmidt Planing Mill Co. v. Mueller et al., 347 Mo. 466, 147 S. W. (2d) 670; Ewing v. Kansas City et al., 350 Mo. 1071, 169 S. W. (2d) 897. See also Warmack et al. v. Crawford et al., 192 S. W. (2d) 406, handed down concurrently herewith.

The mere fact that a prior appeal in the present case was to the supreme court is no ground to support the motion that this second appeal also lies to the supreme court. Bragg v. Ross et al. (Mo. Sup.), 173 S. W. (2d) 415. The Constitution, Art. 5, Sec. 3, supra, prescribes the appellate jurisdiction of the supreme court.

Under Sec. 2079, R. S. 1939, this cause should be transferred to the St. Louis Court of Appeals, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.