Kenneth E. Ewing, Respondent, v. Kansas City, Missouri, a Municipal Corporation; John B. Gage as Mayor of Kansas City, Missouri; Walter R. Scott, Russell F. Greiner, John C. Rodahaffer, Merrill K. Dubach, Edwin A. Harris, Joseph C. Fennelly, George J. Miller and Frank H. Backstrom as Councilmen of Kansas City, Missouri; L. P. Cookingham as City Manager of Kansas City, Missouri; Arthur C. Everham as Director of Public Works of Kansas City, Missouri; Horace R. McMorris as Director of Finance of Kansas City, Missouri; Harry G. Gorman as Treasurer of Kansas City, Missouri; and Thomas J. Patten as Auditor of Kansas City, Missouri, Appellants.—No. 38361.—169 S. W. (2d) 897.

Division One, April 6, 1943.

*William E. Kemp,* City Counselor, and *Arthur R. Wolfe,* Assistant City Counselor, for appellants.

*Roger C. Slaughter* for respondent.

DALTON, C.—Action in equity by plaintiff as a taxpayer, on behalf of himself and all others similarly situated, to enjoin Kansas City, the members of the city council, the Mayor and other officers, from using or permitting the use of the "Old Convention Hall Site" lot for parking lot purposes and from carrying out the terms of an alleged illegal and void ordinance. It is alleged that the traffic plan announced in Ordinance No. 6908, and the proposed use of said lot thereunder, is a mere subterfuge; that the plan was not made in good faith to create trafficways, but for the fraudulent purpose of evading the lawful restrictions imposed upon said lot; that the

lot was purchased with trafficway bond issue funds; that the lot is impressed with a trust for use for trafficway purposes only; and that the defendants seek to use said ordinance to accomplish an illegal purpose, to wit, the use of the lot for automobile parking, and intend to illegally divert the proceeds of the bond issue and defeat and evade its terms.

The trial court found that Ordinance No. 6908 was valid and legal on its face; and that it did not show an unlawful intention to establish a parking station for hire or otherwise, or an intention to violate the restrictions, and refused to enjoin defendants from carrying out its terms and provisions, but the court found that it was in fact the intention of defendants "to strain the terms of said Bond Proposition Eight" (the bond issue for trafficway improvements) to create parking facilities on the lot. The court permanently enjoined defendants from violating said ordinance, or from modifying, changing, or otherwise altering it in any way or manner (to the end that by such changes an area for parking facilities, with or without hire, might be created), and further enjoined defendants from ever permitting other than horizontal or parallel parking along the right hand curbs of the trafficways provided by the ordinance upon said lot. Defendants have appealed.

On May 26, 1931, at a special bond election in Kansas City, a bond issue was authorized "to pay the City's share of the cost of the acquisition of the necessary lands for the opening, widening and establishing of trafficways and boulevards in the city and the improvement of the same for travel, including the necessary bridges and viaducts." From the proceeds of this bond issue, the City on June 28, 1935, acquired a tract of land, referred to as the "Old Convention Hall Site," being approximately the west 2/3 of the block immediately north of the Municipal Auditorium in Kansas City. The Municipal Auditorium is located between Thirteenth and Fourteenth streets and between Wyandotte and Central streets. The lot in question fronts on Twelfth, Thirteenth and Central streets.

Kansas City attempted to make no use of this lot until April 14, 1941. On that date, Ordinance No. 6576 was duly adopted by the City Council. By the terms of this ordinance, the Director of Public Works of said city was ordered and directed "to provide and construct driveways in and through said property, to construct a shelter house thereon, to provide parking facilities for automobiles, and appropriate markings therefor, and to plant shrubs and trees along the margin and borders of said area, all in accordance with" a plan attached, which plan provided a parking area for from 192 to 233 automobiles, depending upon the method of parking, and provided for three north and south driveways, with places for ingress and egress thereto.

Plaintiff filed this suit on May 26, 1941 and, thereupon, after receiving certain legal advice from the City Counselor's office to the

effect that a court might interpret said ordinance as indicating an intention to establish a commercial parking lot, the city council on October 20, 1941, repealed Ordinance No. 6576 and adopted Ordinance No. 6908. By the new ordinance, the Council found that there was "a necessity for the opening and establishing of trafficways in and through said property for the use, convenience and safety of the public when approaching and leaving the Municipal Auditorium . . . and for expediting traffic to, from or through said vicinity." By this ordinance, almost the same authority and direction was given the Director of Public Works as in the preceding ordinance, except that parking facilities for automobiles was not mentioned and a new plan for trafficways was attached. The amended petition upon which the cause was tried was filed after the first ordinance had been repealed and the second ordinance passed.

The new plan provides for a shelter house and landscaping on the south end of the lot, with landscaping on the north end and along the west side. Two north and south traffic lanes (60 feet wide), divided by a promenade, extend between the landscaping at the north and south ends. The east traffic lane has a south entrance (18 feet wide) from Thirteenth street and an east entrance (25 feet wide) off of Wyandotte street, north of the Robert E. Lee Hotel. There is an exit (25 feet wide) on Central street a short distance south of the intersection of Twelfth and Central streets. The west traffic lane enters from Central street, immediately north of Thirteenth street (a 25 foot entrance), and extends north and re-enters Central street a short distance south of Twelfth street, where it has the same exit as the other traffic lane. No plan for parking is shown on this plat. Automobiles using the traffic lanes would discharge their passengers along the promenade between the traffic lanes ▮▮▮▮ and proceed to the Central street exit, while the passengers discharged would proceed south along the promenade to Thirteenth street and across to the Auditorium, crossing at either end of the block.

The ordinance authorized the expenditure of $7,000 of city "Trafficway Improvement Bond Funds" and the total improvement was to cost in excess of $30,000, of which the Works Projects Administration, Federal Works Agency, was furnishing labor amounting to $22,560 and material amounting to $1,956. It was admitted that both the city and the W. P. A. were ready to proceed with the improvement at the time of the trial.

Defendants' answer denied that they were contemplating the establishment of a parking lot, or the diversion of the proceeds of the bond issue, and alleged that, in passing said ordinance, the members of the city council acted in good faith and upon their best judgment to relieve traffic congestion.

In view of the conclusions we have reached, it will be unnecessary to review the evidence relied upon by plaintiff to sustain the in-

junction decree as entered. It will only be necessary to consider the question of our jurisdiction. In doing so, we consider first the issues presented for review.

Many errors are assigned, but all are briefed under three heads: (1) that the decree does not conform to the pleadings, the evidence or the court's findings, and is void; (2) that the court exceeded its authority in attempting to interfere with future legislative acts and discretionary powers of the Council (to modify, change, or alter the ordinance), and in substituting its judgment for that of the governing body of the city as to the character of this public improvement (the use to be made of city streets and the character of parking thereon); and (3) that "the court erroneously granted injunctive relief to allay the fears and apprehensions of the plaintiff and without any substantial evidence to support the decree." Appellants say the evidence wholly failed to show that the members of the City Council or the city officials intended to establish a parking lot on the property.

In reply, the respondent says the decree conforms to the pleadings, the evidence, and the prayer of the petition; that the evidence showed a real intent to create a parking lot; that defendants were enjoined from converting the lot into an area for parking facilities; and that "the decree is fully justified under the law and the evidence." It is apparent, therefore, that respondent seeks merely to sustain the decree, as entered, and has wholly abandoned any claim to other relief, which was denied by the trial court. The only issue presented on this appeal, by either appellants or respondent, concerns respondent's right to the relief actually granted by the decree, to wit, that defendants be perpetually restrained and enjoined "from violating in any way or manner, or to any extent the avowed purpose and intention of Ordinance 6908, as set forth by the terms of said ordinance and the plat attached thereto, . . . and . . . from modifying, changing, or otherwise altering said ordinance in any way or manner to the end that by such changes or alterations said Convention Hall parking area might be converted into an area for parking facilities, either with or without hire; and . . . from permitting the parking of automobiles upon said Convention Hall lot except that horizontal or parallel parking may be permitted along the right hand curbs of the trafficways shown upon Exhibit A."

Appellants seek to invoke the jurisdiction of this court on the theory that the amount in dispute exceeds $7,500. Sec. 12, Art. VI, Constitution of Missouri; Sec. 3 of Amendment of 1884; and Sec. 2078, R. S. 1939; Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S. W. (2d) 332, 334; and other cases.

We have seen that only two issues were tried below. Plaintiff sought (1) to enjoin defendants from carrying out the provisions of the alleged illegal and void ordinance and from illegally diverting

trafficway bond issue funds, and (2) to enjoin defendants from violating the restrictions on said lot by establishing a parking lot thereon (the alleged restrictions having been imposed by the trafficway bond funds invested therein). The first issue was decided for defendants, the second for plaintiff. Only defendants appealed.

Appellants concede that the lot was purchased with trafficway bond issue funds; and that it must be used for traffic purposes, including use for "streets, thoroughfares and ways upon which traffic may be regulated, directed and controlled as to its movement, stopping and starting." Respondent says the decree is very liberal in respect to parking, since he feels "that any parking on the lot is contrary to the terms and provisions of Proposition Eight," but he asks that the decree be affirmed, as entered.

An appeal in an equity case brings up the entire case for review and for hearing de novo on the whole record. Short v. Kidd (Mo. Sup.), 197 S. W. 64, 66; Niehaus v. Madden, 348 Mo. 770, 155 S. W. (2d) 141, 145. However, we consider only the issues actually presented for review. Sec. 1226, R. S. 1939; Rule 15 of this court. Respondent (plaintiff), in his consideration of the issues presented by the appeal, has wholly abandoned the issue decided against him in the lower court. This issue concerned the carrying out of the ordinance, the expenditure of trafficway funds and the use of the Federal grant. While an adverse decision on such issue might have entailed a loss to the city of the Federal grant in the sum of $24,516, in the event the defendants were enjoined from carrying out the provisions of the ordinance, the defendants obtained a favorable decision on that issue. The plaintiff did not appeal and, as respondent here, he has wholly abandoned the issue, and it is not presented for review.

Do we have jurisdiction of this appeal on the basis of the decree entered and the issues here presented? It is frequently stated that the matter of appellate jurisdiction over the subject matter (so far as "amount in dispute" is concerned) is determined upon the record in the trial court at the time the appeal is allowed. State ex rel. Brenner v. Trimble, 326 Mo. 702, 709, 32 S. W. (2d) 760, 762; Odom v. Langston (Mo. Sup.), 159 S. W. (2d) 686; Stuart v. Stuart, 320 Mo. 486, 488, 8 S. W. (2d) 613; Casebolt v. International Life Ins. Co. (Mo. Sup.), 38 S. W. (2d) 1044, 1045; Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713, 716; Bushnell v. Mississippi & Fox River Drainage District, 340 Mo. 811, 102 S. W. (2d) 871, 873; Aquamsi Land Co. v. City of Cape Girardeau, supra. It is further said that appellate jurisdiction cannot be waived or conferred by consent of parties and that "whenever necessary to preserve the constitutional integrity of this court, we have reserved to ourselves the right to pierce the shell of the pleadings, proofs, record, and judgment sufficiently far to determine that our proper ju-

risdiction is not infringed upon, or improper jurisdiction is not foisted upon us by design, inadvertence, or mere colorable, and not real, amounts." Ashbrook v. Willis, 338 Mo. 226, 89 S. W. (2d) 659, 660; Odom v. Langston, supra. In other words, our jurisdiction depends upon live issues being presented on matters within our jurisdiction. Our jurisdiction is to be determined "from the issues really existing in the cause and not from sham or colorable issues as to the amount in dispute," or as to a constitutional question. Esmar v. Haeussler, 341 Mo. 33, 106 S. W. (2d) 412; Ashbrook v. Willis, supra; Kingshighway Presbyterian Church v. Sun Realty Co., 324 Mo. 510, 24 S. W. (2d) 108, 109.

In the case of Bankers' Mortgage Co. v. Lessley (Mo. Sup.), 31 S. W. (2d) 1055, 1058, this court said: "And though timely raised in the trial court, if the constitutional question is not briefed nor urged nor relied upon in this court, it will be deemed abandoned, and, when our jurisdiction depends solely upon such question being involved, we will not retain jurisdiction, even where the case was properly sent here on appeal because of the appearance of such question in the record." Other cases hold to the same effect. Walter L. Lacy Co. v. National Finance Corporation (Mo. Sup.), 73 S. W. (2d) 747, 748; Wright v. Tucker (Mo. Sup.), 137 S. W. (2d) 557, 558; Village of Grandview v. McElroy, 318 Mo. 135, 298 S. W. 760, 762; Cooper County Bank v. Bank of Bunceton, 310 Mo. 519, 276 S. W. 622, 623; Brooks v. Menaugh, 320 Mo. 183, 6 S. W. (2d) 902; Standard Oil Co. v. City of Moberly, 324 Mo. 577, 23 S. W. (2d) 1004; Junior v. Junior (Mo. Sup.), 84 S. W. (2d) 909, 910; See, also, DeHatre v. Ruenpohl, 341 Mo. 749, 108 S. W. (2d) 357, 360. The theory apparently is, that not having been presented, the issue was only colorable and not real. Ashbrook v. Willis, supra.

The issue concerning the validity of the ordinance and the diversion of trafficway funds was the only issue in the cause wherein the amount in dispute was sufficient to give this court jurisdiction. That issue has now been abandoned. It is no longer a live question. No further decision is requested thereon. Accordingly, we conclude that such issue is only colorable and meritless in so far as this appeal is concerned. Botts v. Wabash Railroad Co., 248 Mo. 56, 61, 154 S. W. 53, 55; Little River Drainage District v. Houck (en banc), 282 Mo. 458, 461, 222 S. W. 384, 385; Esmar v. Haeussler, supra; Ashbrook v. Willis, supra. The remaining issue, which is presented for review, concerns ▆▆▆ only the injunction, as entered. As to it, there is nothing in the record to show that the "amount in dispute" exceeds $7,500.

"Where our jurisdiction is invoked on the basis of the amount in dispute and a money judgment is not sought, then such amount must be determined by the money value of the relief to plaintiff, or of the loss to defendant, should the relief be granted, or vice versa, should

the relief be denied." Frank Schmidt Planing Mill Co. v. Mueller, 347 Mo. 466, 147 S. W. (2d) 670, 671.

Since there is no evidence in the record from which the value of the relief granted to plaintiff by the decree can be determined or the loss to defendant thereby, or vice versa, if the decree be set aside, this court is without jurisdiction to determine this appeal. Superior Press Brick Co. v. City of St. Louis (Mo. Sup.), 152 S. W. (2d) 178, 183; Frank Schmidt Planing Mill Co. v. Mueller, supra; Joe Dan Market, Inc. v. Wentz, 321 Mo. 943, 13 S. W. (2d) 641, 644. The cause is, therefore, transferred to the Kansas City Court of Appeals. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.