MERYL PALAN BAER, Plaintiff-Appellant, v. SYDNEY R. BAER, JR., Defendant-Respondent, No. 43933—274 S. W. (2d) 298.

Court en Banc, December 13, 1954.

Rehearing Denied, January 10, 1955.

*Walter Wehrle, Joseph W. Lewis, Charles S. Glazer, John M. Drescher, Jr.,* and *Lewis, Rice, Tucker, Allen & Chubb* for appellant.

*Lon Hocker, Louis Shifrin* and *Sylvan Agatstein* for respondent; *Jones, Hocker, Gladney & Grand* and *Shifrin, Shifrin & Agatstein* of counsel.

DALTON, J.—Plaintiff has appealed from a judgment in her favor awarding alimony at the time she obtained a divorce from defendant. The judgment of divorce was not appealed from and has become final. The judgment as to alimony provides that ''said plaintiff have and recover of said defendant the sum of $500.00 per month for alimony, beginning May 1st, 1953, and ending April 30th, 1954, and the further sums of $400.00 per month for alimony thereafter while she remains unmarried.'' This provision ▮ is a collateral and severable matter and an appeal was properly granted on this issue alone. Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W. (2d) 566, 570(12) ; Carr v. Carr (Mo. Sup.), 253 S.W. (2d) 191, 195(8).

Appellant contends that the trial court erred and abused its judicial discretion in failing to award her alimony in gross in the sum of

Seventy five Thousand Dollars. The appeal was first heard in Division One of this court and, thereafter, the cause was ordered transferred to Court en Banc. The first matter for our consideration is whether this court has jurisdiction of this appeal. We have jurisdiction if, but only if, "the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars." Sec. 3, Art. 5, Const. of Missouri 1945. We determine the issue of jurisdiction by an examination of the entire record presented for review. Vordick v. Vordick, 281 Mo. 279, 219 S.W. 591, 593. When our jurisdiction depends upon the amount involved, as it does here, it must appear affirmatively and with certainty from the record of the trial court at the time the appeal is taken that the amount in dispute exceeds $7,500. Grant v. Bremen Bank & Trust Co.(Mo. Sup.), 108 S.W. (2d) 347; Stuart v. Stuart, 320 Mo. 486, 8 S.W. (2d) 613.

Appellant and respondent were lawfully married on October 4, 1947. They separated on or about July 18, 1952. Appellant's suit for divorce on the ground of general indignities was filed August 1, 1952, and the decree of divorce was entered on April 27, 1953. The indignities shown by appellant's evidence were that respondent had "an uncontrollable temper and was violent at times"; that he would come home any time of day and start yelling at her and running after her, frightening her and threatening her with bodily harm. On two occasions he struck her and she was often in fear of him. On one occasion she ran out of the house, but he struck her before she could get out and he then locked her out. Once he struck her in the face and blackened her eye and once he struck her on her arm and across her head. On one occasion he locked her out of the house for about an hour and on another occasion she had to go to a neighbor's house.

The parties resided in St. Louis and respondent would work a few months from time to time at Stix, Baer and Fuller's, where he was on the Board of Directors of the company; between times he would be at home a few months. On the average of at least once a month while appellant and respondent were living together as man and wife, respondent would tell appellant that he no longer loved her and wished to be divorced from her. Often he refused to take her out socially. He frequently told her he didn't intend to take her out socially and that she was inferior to him both socially and intellectually and she ought to go back to her parents. Quite often, regardless of plans or a date with another couple, respondent would tell her that he was going his own way and that she should go her way. Often he would go out and leave her at home alone. He would not voluntarily tell her where he was going and he would leave home any time between 7 p.m. and 11 p.m. and return sometimes as late as 2 a.m. to 7 a.m.

Appellant's reputation for "morality, veracity and chastity" was shown to be excellent. No children were born of the marriage. On the evidence presented the court found that appellant was the innocent and injured party and granted her a divorce, as stated.

On the issue of respondent's financial standing and ability to pay alimony it was stipulated that respondent's net worth, as of February 24, 1953, was $299,141.38, consisting of cash, securities, notes, real estate and the cash value of insurance policies owned by him on his own life; that his 1952 income from these holdings in his own name was $10,375.67; that he was one of the beneficiaries of a trust indenture, dated December 3, 1935, created by his grandmother, Marie. P. Baer, which trust, as of February 24, 1953, had cash, bonds and common stocks of the value of $288,241.81; and that the respondent had a one-half interest, "subject to the provisions of the trust," under which the trustees could withhold principal and also income under the terms of a court decree. The income from the trust assets for the year 1952 was $8,085.23, of which $4,042.61 was "distributable" to respondent and was "available" to him. Respondent was also admitted to be a beneficiary with his brother, S. Charles Baer, of the Sidney R. Baer, Sr. trust created by his father. The assets of this trust consisted of cash, bonds and common stocks and, as of February 24, 1953, were of the value of $587,563.64 of which respondent had a one-half interest amounting to $293,781.82. The income derived from this trust in 1952 was $27,752.07 and respondent's share was $13,876.03. It was admitted that the income from this trust had been distributed to him "and will continue." His share of the 1952 income from the Marie P. Baer trust was distributable and the income "will be paid to him in the future." The only property that appellant was shown to have was her clothes and the Ford automobile.

The evidence concerning the social standing of the parties, their station in life, the manner in which they lived and the funds necessary to maintain appellant in the station in life to which she had become accustomed during the marriage was about as follows.: They lived in one-half of a "brand-new" two-story duplex owned by the husband. There were three rooms on the first floor, fully carpeted with wool rugs, and two air-conditioned bedrooms and a bath on the second floor. The furnishings were about as nice as could be purchased at the Stix, Baer and Fuller store. Respondent paid the upkeep and repairs on the house, the taxes, the utilities and for lawn work. He also paid all florist bills, magazine subscriptions, insurance premiums, doctor bills, dentist bills, for her perfume, for presents for others and for extra help to serve when they entertained company at dinner or had barbecues. They entertained frequently in their home and outside. In 1951, when they entertained with another couple, there were over 200 guests invited to a cocktail party at one of the downtown hotels. They frequently had two or three couples to dinner or entertained with another couple, in the summer. In 1951 respondent gave appellant a convertible Ford automobile. He also paid all of the expenses for its operation, including insurance, gasoline, washing, et

cetera. There had been only one automobile before the Ford was purchased.

Respondent belonged to the Missouri Athletic Club and to the Westwood Country Club. Both appellant and respondent visited the country club occasionally, she had lunch there at times and respondent paid all of the bills. Respondent often bought some clothes for his wife and paid for them. He wanted her to purchase the best clothes and she usually bought the finest available, suits at $225 to $235, dresses $79 to over $100 and shoes at $22 to $32, retail prices. Appellant was given $400 per month by her husband, $100 of this amount was for clothes, which she could purchase at Stix, Baer and Fuller's at about 35% discount. She paid the maid about $120 per month, spent about $120 to $130 per month for food for the household and had about $50 per month for personal expenses, such as beauty parlor, movies, et cetera.

The parties traveled frequently and extensively. In 1947 they took a honeymoon trip to Mexico City. They traveled by air, first class, and they stayed in Mexico and Acapulco for six and one-half weeks. They made a second trip to Old Mexico in 1949 and stayed seven and one-half weeks. In 1948 they took trips to Chicago and California. In California they visited San Francisco, Los Angeles and Santa Barbara for two and one-half weeks. In 1952 they were in New York for three weeks. For three years the parties bought season opera tickets and for a couple of years season baseball tickets.

At the time of the trial, February 24, 1953, appellant was admitted to be 26 years of age and healthy and active. It was admitted that she had had no special training for any occupation or employment; that she had never done any work for hire; and that she had done work as a volunteer nurse's aide in hospitals. She had graduated from high school and had had a year of ''liberal college education at Wisconsin University'' and two years of training (half of a four year course) at the Art School at Washington University.'' Respondent's age was not shown.

Respondent says that ''the requisite jurisdictional amount in controversy does not appear affirmatively and with certainty from the record.'' His theory is that, in view of appellant's age and expectancy and the tables set out in Sec. 442.540 RSMo 1949, ''the value of the whole decree'' is $69,720.00, or, ''on account of the vast improvement in mortality'' and other factors, the value of the judgment appealed from is $108,800, and far in excess of the amount now claimed. Appellant, on the other hand, insists that the judgment has no definite and certain value in excess of $6,000; and that the balance of her claim is in dispute.

No case has been cited and we have found none wherein this court has been called upon to determine whether it has jurisdiction of the appeal in a case wherein the appellant contends that alimony in gross

in a sum in excess of seventy five hundred dollars should have been awarded in lieu of periodic alimony. This case appears to be one of first impression.

In her petition appellant asked for an award of alimony for her support and maintenance "as the nature of the case and the circumstance of the parties may require." In the course of the trial and immediately prior to the submission of the cause, the record is as follows: "Mr. Glazer: We think this is a case where there should be a lump sum settlement. We think a fair allowance would be $75,000, which is approximately 25 per cent of the assets in his own name at this time. The Court: (To Mr. Hocker) Are you gentlemen opposed to a lump sum settlement? Mr. Hocker: Yes, we are. We don't see any justification for it under this evidence." These statements in the record evidence the trial theory of the parties and their relative positions as made known to the trial court prior to the submission of the cause. In her motion for a new trial, appellant charged that the court erred (1) in failing to award plaintiff alimony in gross; (2) in failing to award alimony in gross in the sum of $75,000; and (3) in awarding plaintiff monthly alimony instead of alimony in gross. The motion for a new trial was heard, taken under advisement, considered and, thereafter, overruled.

This record is sufficient to show that appellant in the trial of the cause sought a definite and specific amount of alimony in gross and a judgment therefore free from all uncertainties. We shall assume without deciding that such a claim based upon evidence in the record may properly be considered in determining jurisdiction on an appeal in a case such as this. In any event, the maximum amount claimed by appellant was seventy five thousand dollars and, in determining jurisdiction, it is not necessary for us to decide whether from all of the facts in evidence the money value of alimony sufficient to compensate appellant for the protection and support lost to her by respondent's breach of the marital obligation exceeds by more than seventy five hundred dollars the money value of the alimony granted by the trial court. Instead, jurisdiction in this case (on appellant's theory) turns on whether the amount claimed by appellant exceeds by more than seventy five hundred dollars the value in money of the relief granted by the judgment of the trial court. Dutton v. Prudential Ins. Co. of America (Mo. Sup.), 190 S.W. (2d) 933.

The case may, therefore, be distinguished from Vordick v. Vordick, supra, where the court said: "As the trial court awarded plaintiff $5,000 alimony, the amount in dispute is the difference, if any, between that amount and either the adequate amount to which plaintiff is entitled under the law and the evidence, or an amount that would yield her an income sufficient to support her according to her station in life. [303] On the question of jurisdiction, therefore, it is for us to determine whether it affirmatively appears from the entire record, including

the evidence, that either the adequate allowance to which plaintiff is entitled under the law and the evidence, or an amount sufficient to yield her the income mentioned, is in excess of $12,500." (219 S.W. 591, 593).

In determining jurisdiction, this court may "pierce the shell of the pleadings, proof, record, and judgment sufficiently far to determine that our proper jurisdiction is not infringed upon, or improper jurisdiction is foisted upon us by mere colorable amounts." Simmons v. Friday, 359 Mo. 812, 224 S.W. (2d) 90, 94(6). On this record it cannot be said that a claim for $75,000 alimony in gross is only colorable, or is fraudulent or is wholly without support in the record. Assuming without deciding that the judgment did unconditionally award appellant $6,000 alimony during the first year, it is clear that the subsequent order for the payment of periodic alimony was subject to certain contingencies. If respondent had appealed from the judgment, we would not have had jurisdiction of his appeal, because as to him the record of the trial court would not have affirmatively shown that the amount in dispute, independent of all contingencies, exceeded $7,500. Jenkins v. Jenkins (Mo. Sup.), 251 S.W. (2d) 243, 245; Stuart v. Stuart, supra.

Appellant contends that "the value of a judgment is the definite amount thereof independent of all contingencies." We do not agree. The question is as to the money value of the *relief* sought, which is the difference in money value between the amount demanded and the judgment obtained.

In determining whether we have jurisdiction of the appeal by appellant in whose favor the judgment was entered, we will assume of course that the judgment was subject to modification by the court. "The court, on the application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper * * *." Sec. 452.070 RSMo 1949. We will further assume that the award in so far as it may be monthly alimony does not survive the death of either party. North v. North, 339 Mo. 1226, 100 S.W. (2d) 582, 585; 17 Am. Jur. 473, Divorce & Separation, Secs. 608 and 609; 27 C.J.S. 999, Sec. 240. We recognize further that the judgment is subject to the limiting provision that the monthly alimony shall continue while appellant "remains unmarried." Nelson v. Nelson, 282 Mo. 412, 221 S.W. 1066, 1068; 17 Am. Jur. 474, Divorce & Separation, Sec. 610.

While the judgment is subject to modification by the court and to termination upon the death of either party, and to termination upon appellant's remarriage, none of these things may happen until after the installments accruing under the judgment appealed from equals or exceeds the amount claimed by appellant. Accordingly, we cannot say that definitely and certainly and regardless of all contingencies the difference in the money value of the alimony claimed and the alimony

granted exceeds the necessary jurisdictional amount. It cannot be said that the difference between the money value of the present judgment and the amount claimed exceeds seventy five hundred dollars. Nor can we say, as appellant contends, that the judgment had either a value of $6,000 or no value at the time the appeal was taken. Clearly the value of the judgment in any amount in excess of $6,000 was contingent, indefinite and uncertain. This court cannot fix its value as either more or less than the $75,000 claimed by appellant, nor can we say with certainty that the money value of appellant's judgment is less than $67,500, so that the amount in dispute exceeds $7,500. This court may not indulge in speculation and conjecture as to the money value of the present judgment in determining the amount in dispute between the money value of the judgment and the amount claimed.

We must and do hold that the jurisdiction of this court in this case does not [304] definitely and affirmatively appear from this record. Jurisdiction of this appeal is vested in the St. Louis Court of Appeals and the cause should be transferred to that court. It is so ordered. *Ellison, Hyde, Hollingsworth, Leedy,* JJ., and *Anderson,* Special Judge, concur.