Harold E. JOHNSON, Plaintiff-Respondent,

v.

E. A. DUENSING, George Duensing, Jr., S. C. Vaughn, J. R. Proctor, R. W. Meyer, Charles Israel, Appellants,

Missouri River Sand and Gravel Company, a Corporation, Defendant-Respondent,

B. D. Trout, R. A. Johnson, Jr., G. W. Winn, Appellants.

No. 47080.

Supreme Court of Missouri,

En Banc.

March 14, 1960.

L. O. Schaumburg, W. H. Martin, Schaumburg & Martin, Boonville, Edward T. Matheny, Jr., Caldwell, Eastin, Blackwell & Oliver, Kansas City, for appellants.

William H. Becker, Columbia, for respondent.

DALTON, Judge.

This cause comes to the writer on reassignment after an opinion on the merits failed of adoption. The action is in equity in two counts, both based upon the same factual averments. The cause was instituted in the Circuit Court of Cooper County on November 19, 1956, by plaintiff-respondent Johnson as a minority stockholder in the defendant Missouri River Sand and Gravel Company, a corporation. He characterizes the action as a minority stockholder's derivative action on behalf of the Corporation for the purpose of restoring to the Corporation a loss alleged to have been sustained by an unlawful sale of 545 shares of its treasury stock and to protect his proportionate interest in the corporate property and his alleged pre-emptive right to acquire additional shares of stock in the Corporation, when shares of its treasury stock are to be sold.

Plaintiff alleged that the loss and damage complained of was the result of the individual defendants acting in concert as the dominant and controlling group of officers, directors and stockholders of the Corporation; that said defendants acted in concert for the purpose of "depriving the plaintiff of his preemptive rights to purchase a portion or all of the said five hundred forty-five (545) shares of stock owned by the corporation, and for the purpose of depriving the corporation of the difference between the par value of said shares of stock and the market value thereof * * *"; and that neither the plaintiff nor any other shareholder was given an opportunity to buy any of said stock owned by the Corporation or an opportunity to bid upon the same prior to said sale. The amount of difference between the market and sale value of the stock was not alleged, nor

was the money value of the loss to plaintiff stated. Plaintiff further alleged that 200 shares of treasury stock in the Corporation had been sold to one of the directors and the other shares to parties selected by the defendant directors.

By the first count of the petition plaintiff sought a declaratory judgment and affirmative equitable relief, to wit, that the sale of 545 shares of the Corporation's treasury stock be declared illegal and the sale rescinded; that the stock, since resold, be returned to the Corporation; that, upon the return of the shares of stock to the Corporation properly endorsed, the original purchase price paid therefor be refunded to the present owners; that said stock be offered to the public for sale to the highest bidder, or to all shareholders proportionately who desired to buy at the fair market price, or at a figure to be found and determined by the court; that the election of certain directors be declared void; and that the court make other orders concerning costs and expenses and for other general relief.

The facts stated in the first count were realleged in the second count and a mandatory injunction was sought to supplement the relief asked in the first count. Plaintiff also asked "that the personal defendants be ordered to repay to the corporation all expenses paid by the corporation for legal services for the defense of this suit and for counsel, advice, and services for the defense of the actions of the personal defendants complained of in this petition." In addition, plaintiff asked for the appointment of a receiver and other relief. The Corporation joined with the individual defendants in defending the action and by answer adopted the allegations of the answer of the personal defendants.

The trial court found that the sale of the 545 shares of treasury stock on December 15, 1955, to a director and other persons chosen by the directors constituted a breach by the directors of their fiduciary duties and obligations as directors and officers of the Corporation and amounted to a constructive fraud upon the defendant Corporation and other stockholders interested therein. The court found the fair value of the treasury stock and its market value to be "substantially in excess" of the value for which it was sold and ordered the sale rescinded and the shares returned to the Corporation for resale by the Corporation at public auction to the highest bidder. The court found that said shares of stock had been sold without notice to the plaintiff and without affording him an opportunity to bid on or to purchase same; that the original purchasers had since resold the shares at a profit; that the defendants now owning the stock had subsequently purchased the shares with knowledge of plaintiff's claims and equities; and that they were not bona fide owners of such shares. The original sale price of the stock was ordered refunded by the Corporation to the present owners on delivery of the stock properly endorsed. The election of the two additional directors was held void. Receivership and injunctive relief was denied. The Corporation was ordered to pay plaintiff $2,758 for costs and expenses in opposing the sale of the mentioned shares of stock and the defendants were ordered to repay the amount to the Corporation. Other detailed orders were entered.

All of the defendants, except the Corporation, have appealed and now contend that the court erred in finding that the sale of the 545 shares of stock to a director and others were fraudulent and improper; (2) that the court erred in the remedy applied, to wit, in ordering recision and subsequent resale of the shares of stock; and (3) that the court erred in not allowing the Corporation's directors to be reimbursed by the Corporation for costs and expenses in defending plaintiff's claim. Appellants further stated that this appeal "has to do only with recision of the stock sales by the trial court and with that court's further order of resale." Respondent Johnson insists that the judgment is supported by the evidence and well within the discretion of the trial judge; that it reaches a just and proper result and should be affirmed.

■ Appellate jurisdiction is dependent upon the questions (or live issues) preserved in the record and presented for review upon appeal. Winslow v. Sauerwein, 365 Mo. 269, 282 S.W.2d 14, 16(2); Vannorsdel v. Thompson, Mo.Sup., 315 S.W.2d 121, 123(2, 3). This Court's jurisdiction of this appeal has not been questioned, but it is our duty sua sponte to investigate and determine that matter. While this is an appeal in an equity case and such appeal brings up the entire record for review and for hearing de novo, yet the Court will ordinarily consider only the issues actually presented on appeal. Ewing v. Kansas City, 350 Mo. 1071, 169 S.W.2d 897, 900 (1); Sections 512.160 and 510.310 RSMo 1949, V.A.M.S. These issues have been stated. Our jurisdiction is first sought to be invoked on the the theory that the trial court ordered recision of the sale of 545 shares of stock of the defendant Corporation, which stock had been sold by the Corporation for $20 per share or for a total of $10,900, and that, since plaintiff-respondent (Johnson) had alleged and the trial court had found that the value of the stock was in excess of the total sale price of $10,900, the amount in dispute exceeds $7,500.

■ The pecuniary value of the shares of stock is not the amount "in dispute" so as to give this Court appellate jurisdiction. It appears that the court ordered the original sale price of $20 per share refunded to the present owners who paid only $25 per share for the stock. The value of the property involved is not the basis for determining jurisdiction, but instead the amount in dispute. Juden v. Houck, Mo.Sup., 228 S.W.2d 668, 669; Superior Press Brick Co. v. City of St. Louis, Mo.Sup., 152 S.W.2d 178, 183(7–9); Powers v. Johnson, Mo.Sup., 302 S.W.2d 899, 901; Vannorsdel v. Thompson, supra, 315 S.W.2d 121, 123(2, 3).

■ This Court is a court of limited appellate jurisdiction, while courts of appeal have general appellate jurisdiction. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S. Before this Court has appellate jurisdiction of a cause, it must affirmatively appear from the record that this Court has jurisdiction of the particular appeal. Cotton v. Iowa Mutual Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246, 249(1–5). The appellate jurisdiction of this Court must appear from the record at the time the appeal is taken. Hemphill v. Jackson, Mo.Sup., 304 S.W.2d 7, 8(3); Haley v. Horwitz, Mo.Sup., 286 S.W.2d 796, 798; Lange v. St. Louis Public Service Co., Mo. Sup., 233 S.W.2d 641(1). We determine the issue of jurisdiction by an examination of the entire record presented for review. Vordick v. Vordick, 281 Mo. 279, 219 S.W. 591, 593. "To preserve the constitutional integrity of this court, we pierce the shell of pleadings, proof, record and judgment sufficiently far to determine that our proper jurisdiction is not infringed upon, or improper jurisdiction is not foisted upon us by mere colorable amounts." Simmons v. Friday, 359 Mo. 812, 224 S.W.2d 90, 94(6). The "amount in dispute," where such is the basis of jurisdiction, as here, is the amount that actually remains in dispute between the parties *on the appeal* and is subject to determination by the appellate court on the basis of questions raised by the record. Lemonds v. Holmes, Mo.Sup., 229 S.W.2d 691, 692(1); Heuer v. Ulmer, Mo. Sup., 273 S.W.2d 169, 170(2); Vannorsdel v. Thompson, supra. In this case the plaintiff obtained a money judgment for $2,758 for his costs and expenses in opposing the sale of this stock and other relief. The object of the suit, however, was not for a money judgment, but for a judgment declaratory of the rights of the parties and for an injunction and receivership. Plaintiff did not appeal from the judgment which denied much of the relief he requested.

"When the object of the suit is to obtain other than a money judgment the amount in dispute must be determined by the value in money of the relief to plaintiff, or of the loss to the defendant, should the relief be granted, or vice versa, should the relief be denied." Superior Concrete Accessories v. Merle E. Kemper Co., Mo.Sup., 284 S.W.2d

482, 485; Kansas City Terminal Ry. Co. v. Manion, Mo.Sup., 290 S.W.2d 63, 69(2–4); Schmidt Planing Mill Co. v. Mueller, 347 Mo. 466, 147 S.W.2d 670, 671. A further review of the evidence is therefore required. With some modification we adopt portions of the statement of facts in the prior opinion.

Briefly, the salient facts admitted by the pleadings, or by the pretrial conference, or established by the evidence, are that the defendant Corporation was organized in 1930. It has ever since been engaged in the dredging and sale of sand from the Missouri River near Boonville, Missouri. It has a capital of $40,000 represented by 2,000 shares of the par value of $20 each. For many years defendants E. A. Duensing, George Duensing, Jr., J. R. Proctor and S. C. Vaughn had been stockholders, directors and managing officers of the Corporation. Some of their prospective customers had bought shares of stock, but most of the shares had remained in the hands of the original owners or their heirs. However, the original individual defendants above named, did not personally own a majority of the stock at the times here involved.

On November 30, 1955, the Company's audit showed a surplus substantially in excess of the previous years and a large increase in equipment, but showed the current liabilities exceeding the current assets by over $10,000. An auditor's report for 1955, showed a surplus of $45,736.80. The plaintiff estimated the Corporation's surplus at $65,736.80. The book value of the property was shown to be $90,543. The defendants disputed these valuations. However, auditors of the Company employed in 1955, reported that the Corporation was badly in need of funds for operating purposes, and recommended that the Company sell its treasury stock of 545 shares, which it had acquired from the original owners. No stock of the Company had ever been listed on the stock market and its market value had not been established.

The plaintiff, residing in Columbia, Missouri, was engaged in the ready-mixed concrete business and in several related lines of activity. He was currently under contract to furnish very select material for the Medical Center at the State University at Columbia. He was much concerned in acquiring a reliable source of good sand supply for his contracts. He was a customer of the defendant Corporation and other producers of sand. He examined the plant and property of the Corporation and concluded his source of supply might be secured if he acquired an interest in the Company. He undertook to obtain stock in the Company sufficient to give him "a voice" in its operations and testified that while he did not seek a majority of the stock, he would have done so if necessary to obtain "an influence" in the Company. He wrote to the stockholders, inquiring of any possible purchases of their stock. In 1955, he purchased 75 shares at $50 per share; 214 shares at $40 per share; 15 shares at $35 per share; 112 shares at $25 per share; 20 shares at $20 per share, a total of 436, or about 29 percent of the outstanding shares at an average of $38.78 each.

On December 15, 1955, the board of four directors of the Corporation were the defendants E. A. Duensing, George Duensing, Jr., J. R. Proctor and S. C. Vaughn. All had been active in the Corporation management for many years. On that date they held a meeting of directors. Their stockholdings, respectively, were as follows: E. A. Duensing, 90 shares; J. R. Proctor, 240 shares; George Duensing, Jr., 295 shares; S. C. Vaughn, 10 shares. No one of them had a majority of the outstanding shares, nor did their combined holdings (635 shares) constitute such majority. At that meeting it was voted to sell the 545 shares of treasury stock which had been repurchased by the Corporation, and were being held as a part of its assets. It was agreed to sell the same at par ($20 per share) as follows: 200 shares to defendant J. R. Proctor (a director), 245 shares to R. W. Meyer, and 100 shares to Charles Israel. Those sales were accordingly consummated.

There was no notice given to the plaintiff or other stockholders of the sale of the 545 shares. Meyer and Israel are described as "nominees" or persons "chosen" by the directors to purchase and to hold some of the shares of the treasury stock.

The evidence of the defendants tended to prove that it was necessary to obtain funds for working capital and to pay Company debts; that the auditor recommended that the directors sell such stock; that they did so after consulting their banker. The banker, already familiar with the Company, was offered an opportunity to purchase the stock and, although he said he thought it was worth from $25 to $30 per share on the basis of the physical assets, refused to buy any of it at any price because of the conflict in management. Defendants contend that the sale of the stock was in good faith and for a reasonable price. They offered evidence that $20 per share was its reasonable value and a fair sale price. Plaintiff estimated the book value of the stock at $65.18 per share and the market value at $50 per share.

After the lapse of nearly a year, the original individual defendants (except Vaughn) and six other stockholders, on November 12, 1956, jointly entered into an agreement with defendant, B. D. Trout to sell and to deliver to him within 14 days prior to November 23, 1956, 1310 shares of stock of the defendant Corporation, for the price of $25 per share. The agreement provided that if receivership proceedings were instituted against the Corporation before delivery, the contract might, at the option of the buyer, be rescinded; that the buyer would indemnify the sellers against any loss or damage arising out of plaintiff's pending action concerning the sale of treasury stock by the Corporation. Pursuant to the above contract, the 545 shares of treasury stock theretofore purchased by defendants Proctor, Meyer and Israel were conveyed, as directed by defendant Trout, as follows: 217 shares to himself and 164 shares to each of his brothers-in-law, defendants R. A. Johnson and G. W. Winn.

All had knowledge of the pendency of this action. These new parties were subsequently made defendants in the action and they have appealed from the judgment entered against them and the other defendants. It will not be necessary to review the evidence further.

The court found that the evidence did not definitely establish the fair and reasonable value of the treasury stock, but, as stated, found that the 545 shares of treasury stock when sold to defendants Proctor, Meyer and Israel "had a fair value and a market value substantially in excess of its par value of $20 per share."

In their reply brief appellants say that plaintiff by this action on "behalf of all of the stockholders and of the Corporation" sought either recovery of the 545 shares, or a money judgment against the personal defendants for the difference between the purchase price and the value of the shares; and that plaintiff's evidence tended to show the shares had an adjusted book value of $65.18 per share and a market value, on the date of the sale, of from $40 to $50 per share. Appellants insist that, if relief be denied plaintiff, the Corporation and the stockholders collectively will lose the difference between the $20 per share sale price and the true value of the shares as shown by plaintiff's evidence and hence at least $20 per share or more than $10,900 will be lost; and that the amount in dispute exceeds $7500. The trouble with this theory is that the trial court denied plaintiff's prayer for judgment on the mentioned basis and he did not appeal. The individual defendants alone complain of the judgment as entered. We may not ignore the judgment appealed from, when determining appellate jurisdiction.

Appellants cite and rely upon the case of Tureman v. Ketterlin, 304 Mo. 221, 263 S.W. 202, 205, 43 A.L.R. 1155 where a number of home owners had joined in a petition to restrain the construction of an undertaking establishment and the relief sought had been granted and defendants ap-

pealed. The court there said: "Whether the establishment of an undertaking business at 2657 Independence boulevard would impair the values of plaintiffs' residence properties was a contested issue in the case. Plaintiffs' evidence tended to show that, if the relief they sought was denied them, their financial loss, and that of several of them individualy, would greatly exceed in value the sum of $7,500. There is no question, therefore, but that we have jurisdiction of this appeal."

In that case the relief granted by the decree was based upon the evidence of financial loss and if the decree be vacated, the plaintiffs on the basis of their evidence would lose the value of the decree to them. Such is not the situation here. In the case at bar, if the judgment be vacated, what will either the plaintiff or the Corporation lose? Plaintiff will lose his $2,758 judgment against the Corporation and the Corporation will lose its judgment for reimbursement and it will lose whatever the shares of stock would bring at public sale over and above the $20 per share which the Corporation must refund to the present owners from the proceeds of the resale of the stock at public auction. Plaintiff, who owned less than one-fourth of the issued stock of the Corporation, would also lose his benefit of the excess sale price to the extent of his interest in the Corporation.

What will 545 shares of treasury stock bring in excess of the $20 per share when they are offered for resale at public auction? The sale is not to be governed by plaintiff's estimate of values and no minimum price is fixed by the decree. What will respondents lose if the judgment appealed from is vacated? The amount is entirely contingent on the sale price to be obtained at public auction.

■ When the appellate jurisdiction of this Court is based upon the amount in dispute, the amount in dispute must exceed $7,500 *regardless of all contingencies.* Baer v. Baer, 364 Mo. 1214, 274 S.W.2d 298,

303(7); Snowbarger v. M. F. A. Central Co-op., Mo.Sup., 317 S.W.2d 390, 393(3); State ex rel. State Highway Commission v. Schade, Mo.Sup., 265 S.W.2d 383, 384 (2).

■■ This Court will not indulge in speculation and conjecture as to the amount in dispute or concerning the value of the relief sought *on appeal* for the purpose of assuming jurisdiction. Lemonds v. Holmes, supra, 229 S.W.2d 691, 692(3); Beasley v. Athens, 365 Mo. 158, 277 S.W.2d 538, 539(2). Jurisdiction may not be waived or conferred by consent. State ex rel. Thompson v. Roberts, Mo.Sup., 264 S.W.2d 314, 317; Ewing v. Kansas City, supra, 169 S.W.2d 897, 900.

■ Our conclusion is that the evidence does not show what the stock will bring at public sale and the record fails to affirmatively show that the money value of the relief obtained by plaintiff by the judgment appealed from exceeds $7,500, or that, if the judgment is vacated, the money value of the loss to respondents will exceed $7,500. Further, the finding by the court that the shares of stock were worth substantially in excess of $20 per share cannot be construed as a finding that the shares had a market value in excess of $33.77 per share, or of any specific amount, and the judgment itself does not show that the amount in dispute exceeds $7,500.

We next consider the value of the relief sought on this appeal by appellants, or the loss to appellants if the relief sought be denied and the judgment appealed from be permitted to stand. On this issue appellants say that "if the actual value of the stock exceeded the amount of reimbursement ($20 per share), then the loss to defendant-stockholders who are compelled to surrender it for $20 per share is the amount of the excess"; and that, since plaintiff's own testimony tended to show that the sock sold for $20 per share was underpriced by at least $20 per share, the aggregate loss to defendant-stockholders

would be at least $20 per share or $10,900. Appellants cite Jesser v. Mayfair Hotel, Inc., Mo.Sup., 316 S.W.2d 465, 467; however, in that case the plaintiff took the appeal and this Court properly took jurisdiction.

In this connection we must keep in mind that appellants' position in the trial court and on this appeal is definitely based upon the theory that the evidence does not fairly support a determination that the stock sold was underpriced. Appellants are bound on appeal by their theory in the trial court and would not be permitted to change that theory on appeal. That appellants stand to lose in excess of $7,500, if relief on this appeal be denied, is contrary to appellants' whole theory of the case. Defendants' evidence in the trial tended to show that $20 per share was a fair and reasonable price for the treasury stock when it was sold at that price. The Corporation's stock had not been on sale in the general market and appellants' further theory was that the directors were not aware of the prices plaintiff had been paying for stock in order to acquire enough to have influence with the Corporation, obtain a voice in its operations and be able to use the Corporation in connection with his own business. Appellants may not ask this Court to take jurisdiction of their appeal on the ground that the stock was in fact worth $40, $50 or $65 per share and that it is being taken away from them by this judgment for $20 per share or that by this judgment they are being deprived of the benefit of their bargain and caused to lose in excess of $7,500. Appellants may not seek relief on appeal upon the basis of plaintiff's evidence, the validity of which their own evidence denies. It clearly appears that defendants' trial theory in the court below excludes this Court's jurisdiction upon an appeal by defendants on the theory that the money value of the relief they seek here exceeds $7,500. Beasley v. Athens, supra, 277 S.W.2d 538, 539(3); Strothkamp v. St. John's Community Bank, Inc., Mo.Sup., 329 S.W.2d 718, 720.

We conclude that there is no evidence from which the value of the relief granted to the plaintiff by the decree can be determined or what respondents will lose if it is vacated; and that on defendants' evidence and trial theory in the court below (by which appellants are bound) the value of the relief sought by appellants does not exceed $7,500.

The cause is ordered transferred to the Kansas City Court of Appeals.

All concur.