Charles D. LONG, Plaintiff-Appellant,

v.

NORWOOD HILLS CORPORATION,
Defendant-Respondent.

No. 49108.

Supreme Court of Missouri,

Division No. 1.

Oct. 8, 1962.

Edward W. Fredrickson and John P. Montrey, St. Louis, for (plaintiff), appellant.

Leritz & Leritz, J. D. Leritz, J. L. Leritz, St. Louis, for (defendant), respondent.

Jesse E. Bishop and John B. Sharpe, St. Louis, for amicus curiae.

HOLMAN, Commissioner.

Plaintiff, the owner of 10 shares of stock in Norwood Hills Corporation, defendant herein, brought this suit seeking to dissolve said corporation and to have the assets thereof sold by a receiver to be appointed by the court, and the proceeds distributed according to law. Defendant was incorporated in 1933 under the laws of Missouri relating to business companies. It was and is plaintiff's theory that from the beginning the officers and directors have operated a country club and have devoted· the assets of the corporation to the enjoyment of its members, have made no conscientious effort to operate the business in a manner that would produce a profit for the corporation, and that such conduct is illegal and fraudulent to the interests of the stockholders. A trial resulted in a judgment in favor of defendant and plaintiff has duly appealed. Since we have concluded that we do not have jurisdiction of this appeal a brief statement of the facts will be·sufficient for the purpose of our discussion of the jurisdictional question.

For all practical purposes defendant was the successor to North Hills Country Club which had become insolvent. Defendant was authorized by its charter, among other things, to purchase, hold, sell, and lease real estate, and "to engage in the business of operating golf courses, clubhouses, swimming pools * * *." There were 82 original subscribers, including plaintiff, each of whom paid $100 for one share of stock in the defendant corporation. The original bylaws provided that such stock could not be transferred on the books of the corporation until it had been offered for sale to the corporation for a period of 30 days at the price for which the stock was originally issued. Prior to the repeal of this bylaw in 1949 a number of the shareholders had sold their stock to the corporation with the result that the number of shares was reduced to 66.

Shortly after incorporation defendant purchased the personal property of North Hills from its receiver and entered into a lease of the real estate formerly occupied by North Hills, which lease contained an option to purchase said real estate. Since that time defendant has operated two golf courses, a clubhouse, swimming pool, and other facilities incident to such operations. Defendant has always operated a private country club but for a number of years

it permitted outsiders to play on one of the golf courses upon payment of green fees.

In 1941 defendant exercised its option to purchase the 326 acres of land it had leased shortly after its incorporation. It has since sold approximately 15 acres but is still the owner of the remainder thereof.

Plaintiff was a member of Norwood Hills Country Club until 1941, at which time he joined another country club and discontinued his membership in Norwood. In May 1949 the stockholders adopted an amendment to the charter which provided for a stock split of ten shares for one—the new shares to have a par value of $100. The purpose of this stock split was said to be to increase the number of shares so that more members of the country club could become stockholders. Plaintiff, however, retained his 10 shares of stock. As the financial condition of the corporation improved the market value of these shares increased so that at trial time the reasonable market value was $386 a share, which was also the book value of the shares.

In January 1958, plaintiff's attorney appeared at the annual stockholders meeting of the corporation and before the board of directors and, in each instance, requested that the dues of members of the country club be increased, if necessary, and that the corporation be operated in a manner so as to provide funds for the payment of a dividend to the stockholders in an amount which would provide a reasonable return on the fair cash value of the corporate assets. Shortly thereafter, a voting trust was formed among a majority of the stockholders in order "to preserve the corporation and to provide for the carrying out of its purpose to operate a country club."

On October 31, 1959, the net worth of the corporation, according to its books was $240,815.24.

Plaintiff offered James P. Wilson as an expert witness on the question of the reasonable market value of defendant's real estate. On objection the court ruled that such testimony was not admissible unless the market value was fixed upon the basis of the use of the land in the operation of golf courses. However, the witness was permitted to give his testimony, under Civil Rule 73.01(a), V.A.M.R., so that the evidence is included in the transcript even though it was not admitted. The witness expressed an opinion that said real estate had a fair market value of $1,850,000. In arriving at this valuation the witness stated that he thought the clubhouse and a few acres should be sold to an institution and that the best price for the remainder of the land could be obtained if it were sold for use as a subdivision. When used for building lots this witness considered the land worth approximately $6,000 per acre. For the purpose of determining the jurisdictional question hereinafter discussed we will assume that the evidence of Mr. Wilson was admissible.

Plaintiff filed this suit on December 30, 1958. The cause was tried on various days during the winter of 1960–1961 and the judgment entered herein on July 18, 1961.

In his jurisdictional statement plaintiff contends that we have jurisdiction because "title to real estate is involved" and also because of the "amount in controversy." We do not agree with either view.

While it is true that the defendant owns real estate and plaintiff seeks a judgment which would result in the sale of said real estate by a receiver, and the distribution of the net proceeds to the stockholders, that does not indicate that this appeal involves "the title to real estate" within the meaning of Article V, Section 3, Constitution of Missouri 1945, V.A.M.S. "To give this court jurisdiction on the ground that title to real estate is involved, the title must be in dispute, that is, there must be a title controversy to be settled, First National Bank of Monett v. Kinser, 341 Mo. 819, 109 S.W.2d 1221, 1222, the judgment must directly affect or operate upon the title itself, Ballenger v. Windes, 338 Mo. 1039,

93 S.W.2d 882, 883, and Ashauer v. Peer, [346 Mo. 218] Mo.Sup., 139 S.W.2d 991; and the judgment must determine title in some measure adversely to one litigant and in favor of another or take title from one party and give it to another. Nettleton Bank v. Estate of McGauhey, 318 Mo. 948, 955, 2 S.W.2d 771, 774." Burch v. Horn, Mo.Sup., 152 S.W.2d 88, 90, 135 A.L.R. 1063. This court has uniformly held in partition suits wherein the only relief sought was either partition in kind or the sale of the land and division of the proceeds among the various owners that title to real estate is not involved in the jurisdictional sense. Burch v. Horn, supra; Stewart v. Stewart, Mo.Sup., 269 S.W.2d 49. The situation here is analogous to that existing in partition suits seeking the sale of real estate. We accordingly rule that this court does not have appellate jurisdiction on the basis that title to real estate is involved.

■■ In order for this court to have jurisdiction upon the other ground heretofore mentioned it is necessary that the record affirmatively disclose with certainty that the amount in dispute, regardless of all contingencies, exceeds $15,000. Section 477.040, RSMo 1959, V.A.M.S. "This court will not indulge in speculation and conjecture as to the amount in dispute or concerning the value of the relief sought *on appeal* for the purpose of assuming jurisdiction. Lemonds v. Holmes, supra, [Mo.Sup.] 229 S.W.2d 691, 692(3); Beasley v. Athens, 365 Mo. 158, 277 S.W.2d 538, 539(2)." Johnson v. Duensing, Mo.Sup., 332 S.W.2d 950, 956. Appellant has assumed that the amount in dispute is the total value of defendant's assets. In so doing he is in error. Plaintiff does not seek to recover the assets of defendant and there is no dispute concerning the ownership thereof. The sole issue is whether the defendant will be dissolved and its assets sold by a receiver. Again, we find the situation analogous to that existing in partition suits. It is well settled in those cases that the value of the real estate which the plaintiff seeks to have

partitioned or sold does not constitute the amount in dispute in a jurisdictional sense. Stewart v. Stewart, supra.

■ Plaintiff did not seek a money judgment but sought other relief as heretofore outlined. In that situation the "applicable rule is that when the object of the suit is to obtain other than a money judgment the amount in dispute must be determined by the value in money of the relief to the plaintiff, or of the loss to the defendant, should the relief be granted, or vice versa, should the relief be denied." Superior Concrete Accessories v. Kemper, Mo.Sup., 284 S.W.2d 482, 485.

■ It appears clear that a judgment either for or against defendant would not result in any monetary gain or loss to it. A judgment against it would result in a sale of its assets but there is nothing in the record to indicate that defendant would sustain any financial loss in that event. We think, however, that a judgment in favor of plaintiff would result in a pecuniary gain to him, *in some amount*. This for the reason that he is a minority stockholder in defendant corporation and the number of persons who might be interested in purchasing his stock is limited. For those reasons, and for the further reason that no dividend has ever been paid on the stock, we think the liquidation value of plaintiff's stock would exceed the market (and book) value thereof which, at trial time, was $3,860. It is our view that the amount by which the liquidation value of plaintiff's stock exceeds its market value is the "amount in dispute" in this case for the determination of the question of our appellate jurisdiction herein.

In order for this court to have jurisdiction of this appeal it must appear from the record, with certainty, that the amount plaintiff would receive upon the liquidation of defendant's assets would exceed $18,860. There was evidence that the book value of defendant's assets was approximately $241,-000. However, plaintiff's expert was of the opinion that the defendant's land was of the

value of $1,850,000. If, upon liquidation, the assets of defendant should sell for the amount last mentioned, and if said entire sum were distributed to the stockholders, plaintiff would receive about $28,000, and, in that event, we would have jurisdiction. However, there is no evidence in this record from which we may compute, with any degree of certainty, the net amount that would be available for distribution to stockholders in the event of liquidation.

If plaintiff should prevail and defendant is liquidated the receiver, before making a distribution to stockholders, would be required to pay (1) the expenses of selling defendant's property; (2) taxes of various kinds due the United States, the State of Missouri, and political subdivisions thereof; (3) debts and other claims against defendant; (4) the expense of receivership, including compensation for the receiver and the fees of his attorneys; and (5) various other costs, fees and expenses incident to the dissolution of defendant and the liquidation of its property. The evidence in this record affords no basis from which we could make even a reasonable estimate of the amount that the receiver would be required to pay out for the various items herein mentioned.

■ In the situation presented, it would be sheer conjecture and speculation for this court to attempt to estimate the amount of the debts and expenses which the receiver would have to pay in order for us to determine the net amount that would be available for distribution. This we are not permitted to do. See Bostian v. Milens, 354 Mo. 153, 188 S.W.2d 945, Whitworth v. Monahan's Estate, 339 Mo. 1123, 100 S.W.2d 460, and Freeman v. De Hart, Mo. App., 303 S.W.2d 217. We accordingly rule that the record does not affirmatively show, regardless of all contingencies, that the amount in dispute in this case exceeds the sum of $15,000 and hence this court does not have jurisdiction upon that ground. We have examined the record in the light of the other provisions of Article V, Section 3, supra, and find no other basis for giving this court jurisdiction of this appeal.

We accordingly conclude that this case should be transferred to the St. Louis Court of Appeals. It is so ordered.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.