LIBBIE U. MILLER, Appellant, v. SANFORD J. MILLER.

**Division One, July 13, 1907.**

1. **DIVORCED WIFE: Suit for Money Appropriated by Husband: Settlement in Divorce Suit.** An agreement by a wife, in her suit for divorce, to accept, by way of alimony, in full settlement of all claims against her husband, one-half of the value of his property, estimated at a definite sum, and an acceptance of that sum and an acknowledgment of payment of judgment therefor, are a complete bar to her suit against him after divorce granted to recover money which she alleges was hers and was collected by him and appropriated to his own use while they were husband and wife—that money or the property in which it was invested being considered in estimating the aggregate value of his property.

2. ———: ———: ———: **Estoppel.** Whether or not a woman is estopped to dispute an agreement to accept a definite sum of money, by way of alimony as a settlement, of all claims against her husband's estate, entered into before the divorce decree was rendered, she is, nevertheless, estopped by her acceptance, after the decree was rendered, of the sum agreed upon by way of settlement.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*H. F. Millan* and *Higbee & Mills* for appellant.

*Dysart & Mitchell* and *A. D. Risdon* for respondent.

VALLIANT, P. J.—Plaintiff obtained a decree of divorce from defendant in 1901 in the circuit court of Randolph county, and she now brings this suit against him to recover certain sums of money which she alleges were hers and were collected by him and appropriated to his own use while they were husband and wife.

The petition is in three counts. The first is for $1850, the proceeds of a sale of a certain lot in Kirksville; the second, for $627.40, proceeds of the sale of certain building association stock; and the third, for $3500, proceeds of the sale of certain other real estate in Kirksville. In his answer the defendant admits receiving the several sums of money and the appropriation of them to his own use and justifies his acts by saying that the lots mentioned were really his, bought by him and paid for with his own money and the title was taken in the plaintiff's name who was then his wife for the reason that there was pending over him certain litigation wherein he was sued for a large sum which both plaintiff and he believed to be unjust and without foundation in law or equity, and they agreed to put the title in her name to put the property beyond the reach of that claim, and with the understanding between them that she would hold the title in trust for him.

And as to the building association stock the answer was that the defendant, desiring to buy twenty shares of such stock, was informed that the by-laws of the association would not allow him to own more than ten shares, therefore he took ten shares in his own name, and afterwards bought four shares in his wife's name. He paid his own money for the shares so purchased and continued paying the regular assessments for a time, when he could no longer carry them, and therefore sold the four shares for $627.40; that the plaintiff was fully informed of this transaction and the reason why the stock was taken in her name.

Then the answer continues to the effect that in October, 1900, the plaintiff brought suit against defendant for divorce and alimony in the circuit court of Adair county where they resided, which suit was afterwards transferred to the circuit court of Randolph county by change of venue. That while the divorce suit was pending the parties thereto, with the assistance and under

the advice of their respective attorneys, had an adjustment and settlement of their property interests, and it was then and there agreed that defendant should pay the plaintiff in full settlement of all her claim, right, title or interest in defendant's property $3,000 in addition to what he had already paid her as temporary alimony in the case; that in the decree of divorce which followed it was adjudged that defendant should pay the plaintiff that sum, and in pursuance thereof he did so and the plaintiff acknowledged full satisfaction of the judgment in open court.

The reply was a general denial.

The cause was tried by the court without a jury, and at the request of the plaintiff the court made a special findings of the facts. These findings in the main sustained all the affirmative statements of the answer. The judgment was for the defendant, and the plaintiff appealed.

The counsel are not agreed as to whether the answer converted this into a suit in equity; on the one side it being contended that it is an action at law and the findings of the court are not reviewable beyond ascertaining that there was some substantial evidence to sustain them; on the other, that it is a suit in equity and this court must weigh the evidence. Whether viewed in the one aspect or the other we think the evidence sustains the court's findings.

But the plaintiff contends that even if the facts stated in the answer as to the motive for taking the title in her name are true, they amount in effect only to a plea that the title was so placed to defraud creditors and therefore the court will not grant the defendant relief from the consequence of his own fraudulent act.

If a man conveys his property to defraud his creditors a court of equity will not aid him to recover it from the grantee. [Sell v. West, 125 Mo. 621.] But

under the facts of this case was this a transaction made to defraud creditors?

The answer avers that it was to put the property out of the reach of a person who was asserting a claim against defendant which he and the plaintiff both agreed had no just foundation in law or equity and the evidence shows that the then pending litigation in regard to that claim resulted in a judgment in defendant's favor. Therefore they were justified in their estimates of the character of the claim. In Bump on Fraudulent Conveyances (4 Ed.), sec. 441, it is said: "If there is, however, no valid claim against the grantor, an agreement to re-convey may be enforced, although the transfer is made to defeat an anticipated recovery in an action against him." The authorities as far as we have examined them, however, are not unanimous in support of that proposition and we are not going to decide that point now because it is not necessary in this case.

The testimony shows that while the divorce suit was pending, both parties being assisted by counsel, the question of alimony came up for discussion, and after considerable negotiation it was agreed that if plaintiff obtained a decree for divorce she should be awarded alimony equal to one-half the value of defendant's property; then the question arose, what was that value? To settle this question they took depositions, they made a list of all the defendant's possessions, estimated the value of each item and summed up the total. Then they took an inventory or reckoning of defendant's liabilities and subtracting the sum total of his debts from the sum total of his assets they reached the conclusion and agreement that he was worth $6,000, and thereupon they agreed that the decree for alimony should be $3,000, and it was so adjudged. In that list of assets was included the item of $3,500 sued for in the third count of this petition, which it seems then existed in the shape

of a note given by one Still, the purchaser of some of the lots mentioned; the other items sued for being money collected and used in his business did not exist in tangible shape. And the evidence also shows that while that estimate of the net value of defendant's assets was being made, involving, as already said, a list of the debts he owed, the plaintiff made no claim that he owed her anything. Both parties were aiming to make an equal division of the net value of the property. If we deduct the $3,500 charged to defendant in that list of his assets, it would of itself reduce the amount that plaintiff would have recovered as alimony on the bases agreed, to about $1,500 instead of $3,000, which she got; and if the sums that the plaintiff now claims to be due her had been put in the list of debts owed by defendant and deducted from the total of his assets there would have been nothing to divide.

It is said, however, that she was then a married woman dealing with her husband and is not estopped by her act. We will not discuss the question of whether the law of estoppel can be applied to a wife in her dealings with her husband, because it is immaterial in this case. It is true that while the negotiation was going on she was still the wife of defendant, although even then she was dealing with him at arms-length, with her lawyers between him and her. But after the decree of divorce was rendered she was a free woman, and free as she was and with the aid and guidance of her counsel, she accepted the $3,000 and acknowledged it in open court.

Under her agreement she was not entitled to that $3,000 unless the net value of the property of the defendant amounted to $6,000, and she knew that it did not amount to that sum if the $3,500 Still note was deducted from his assets or if the claim she now makes was added to his liabilities.

If it be conceded that defendant became liable for

collecting money due his wife and appropriating it to his own use without her consent in writing, still the accounting she had with him under the circumstances above mentioned and the receiving from him the result of that accounting was a complete settlement of the claim she now sues for.

The judgment is affirmed. All concur.