## MARGUERITE M. REYNOLDS v. JAMES G. REYNOLDS, Appellant.

### Division One, March 5, 1923.

1. **DIVORCE: Burden.** In a suit for divorce it is incumbent on plaintiff to make out her case by the preponderance of the evidence.

2. ———: **Conflicting Testimony: Deference to Trial Judge.** While the appellate court is not absolutely bound by the finding of the trial judge that plaintiff in the divorce suit had made out her case by the greater weight of the evidence, considerable deference is due the trial court in a case in which the testimony is conflicting.

3. ———: **Adultery: Testimony of Paramour: Relaxation of Rule.** The rule respecting corroboration of the testimony of a paramour is not a hard-and-fast rule, but has been weakened by the fact that it had its origin in considerable part in a former rule, which no longer exists, that the parties to a divorce suit were not competent to testify.

4. ——: ——: ——: **Testimony of Household Servant Girl.** The rule respecting corroboration of the evidence of a paramour cannot be rigidly applied to the testimony of a servant girl of good reputation employed in defendant's home, concerning whom there is no testimony that she had ever had sexual relations with others, and who, without any motive shown or fact creating suspicion, testified that on several occasions defendant, although unwelcome and resisted, seized her and had intercourse with her against her will.

5. ——: **Confidential Communications: Demand for Excessive Intercourse.** Testimony of the wife in her suit for divorce that her husband by mental duress made daily demands for sexual relations with her and that his expectations of sexual gratification were of daily occurrence is not incompetent as privileged confidential communications. Neither can it be conceded that the word "demands" used in such connection necessarily implies conversation.

6. ——: ——: ——: **Knowledge of Injurious Effects.** Evidence of defendant's sexual excesses is competent without a direct show- that he had knowledge that they were injurious to his wife's health, for the question of his knowledge is one of inference from all the facts in evidence.

7. ——: **Alimony in Gross: Property Rights: Estoppel.** An allowance of alimony in gross to the wife and that she "be hereafter barred from setting up or claiming dower or other rights in the lands and personal property of defendant," if paid and accepted by plaintiff will effectually estop her from setting up any further claim to his property, and her acceptance being tendered the Supreme Court refuses to rule that the trial court had no power by its judgment to thus adjudge and settle all questions of property rights.

8. ——: **Excessive Alimony: $20,789.76 in Gross.** The wife was twenty-four years of age and the husband thirty-seven at the time of their marriage, and they lived together twelve years; neither had ever been previously married; she had previously been a teacher, and is a woman of refinement and education; two children born of the marriage died at or near birth, and her health, through no fault of hers, is impaired; he is a vigorous man, with a fine town house and a great farm, and is worth ninety thousand dollars; she aided him in the management of the farm as well as in conducting the affairs of the home; her conduct is admitted to have been blameless, and the record shows misconduct on his part of a character that is important in determining the amount of alimony; he has no children or other dependents, and her acceptance of the award will free his property entirely from further claims. *Held*, that, in view of these and other facts established by the record, an allowance of alimony in gross in the sum of $20,789.79 was not excessive.

Appeal from Cape Girardeau Court of Common Pleas.—
*Hon. John A. Snider,* Judge.

AFFIRMED.

*D. W. Karraker* and *Spradling & Burrough* for appellant.

(1) The court attempted to take into account, adjudicate and settle all questions of property rights, both present and inchoate, between the parties, and in so doing it proceeded wholly without jurisdiction, and its judgment in that respect is void. Ecton v. Tomlinson, 278 Mo. 287; Davison v. Davison, 207 Mo. 707; Fisher v. Fisher, 207 S. W. 261; Aylor v. Aylor, 186 S. W. 1071. (2) There is nothing in the pleadings in this cause authorizing the court to enter a decree adjudicating the property rights of the parties, and such adjudication is beyond the scope of the pleadings. Ecton v. Tomlinson, 278 Mo. 282; Hasselbach v. Kleissle, 224 S. W. 75. The respondent carried the burden of making out her case by a preponderance of the evidence. The granting of divorces is against the interests of the State and of society, and the courts see to it that complainants sustain the charges by a clear preponderance of the evidence. Appellant submits that respondent has not established her case by a preponderance of the evidence, and for that reason the decree should have been denied. Mahn v. Mahn, 70 Mo. App. 337; Gruner v. Gruner, 183 Mo. App. 157, 172; Anderson v. Anderson, 2 A. L. R. 1617, 1620; 19 C. J. 131. (3) The respondent testified to the charges of cruelty and excesses and L. B. testified to the adultery. Neither corroborated the other. A divorce, together with a large amount of alimony, should not be allowed in a case of this character without some corroborative evidence. Maget v. Maget, 85 Mo. App. 6; Gedwell v. Gedwell, 184 Mo. App. 496; Wallace v. Wallace, 194 S. W. 523; Libbe v. Libbe, 157 Mo. App. 701; Scholl v. Scholl, 194 Mo. App. 559. (4) Respondent relies wholly on the

testimony of L. B. for the purpose of establishing adultery. If she sustained the relation with appellant that respondent contends she did, then she would be a paramour of appellant, and the courts hold that the testimony of a paramour should be received with great caution. 19 C. J. 141; 9 Am. & Eng. Ency. Law, 762; Fawcett v. Fawcett, 61 N. Y. S. 108; Letts v. Letts, 82 Atl. 845. The appellant testified frankly and fully concerning all the charges made by respondent and his testimony was not refuted or impeached and should have more weight than that of a self-confessed adulteress. (5) The court permitted respondent, over the objection and exception of appellant, to testify to private communications between her and her husband when no one was present. This was error. McPheeters v. McPheeters, 227 S. W. 872; Revercomb v. Revercomb, 222 S. W. 889; Gruner v. Gruner, 183 Mo. App. 157, 171; Berlin v. Berlin, 52 Mo. 131, 152; Ayers v. Ayers, 28 Mo. App. 97; Gisel v. Gisel, 219 S. W. 664. (6) Respondent testified that she had never advised appellant that the alleged cruelty and excessive sexual relations were injurious to her health and endangered it, and for that reason all of her testimony relative to these matters should not have been admitted. Maget v. Maget, 85 Mo. App. 6; 9 Am. & Eng. Ency. Law 792; 19 C. J. 55; Shaw v. Shaw, 17 Conn. 189; Mayhew v. Mayhew, 61 Conn. 233; Moores v. Moores, 16 N. J. 275; Coles v. Coles, 113 S. W. 418. (7) The amount of alimony awarded respondent is excessive. The respondent did not contribute in the slightest degree, either in money or labor, or in sacrifice or thought, to the accumulation of the property of appellant. The appellant owned all of this property prior to his marriage with respondent. Vordick v. Vordick, 219 S. W. 591; Lemp v. Lemp, 249 Mo. 295, 330; Cummings v. Cummings, 15 N. W. 485; Necker v. Thredt, 113 N. W. 447.

*Oliver & Oliver* for respondent.

(1)  The court had the right, under the decisions of this court, in fixing the alimony in gross, to fix a specific sum in money to be paid to the plaintiff, and to enter an order barring the wife from subsequently claiming dower in her husband's property.  Arnold v. Arnold, 222 S. W. (Mo.) 1001; Aylor v. Aylor, 186 S. W. (Mo.) 1072.  (2) (a) Should the court hold, however, that that portion of the decree barring dower was beyond the power of the trial court, the defendant cannot complain. It is to his advantage.  The plaintiff is the one whose right is taken from her, but she is not complaining, and she alone has that right.  The trial court attempted to render a full and complete settlement of all the domestic relations between these mismated parties.  It was equitable and should be permitted to stand.  Arnold v. Arnold, 222 S. W. (Mo.) 996, l. c. 1001.  (b)  There is one decision in this State (Ecton v. Tomlinson, 278 Mo. 282, which was a collateral attack upon a prior decree of divorce in which dower was barred) in which it is held that the order barring the dower was beyond the power of the court.  Yet, in no instance that we have been able to find has the wife been permitted to recover dower where an order barring dower was made a part of the decree of divorce.  It has always been held that she was estopped and barred by reason of the decree and her subsequent actions, and it must be so held.  Ecton v. Tomlinson, 278 Mo. 282; Crenshaw v. Crenshaw, 276 Mo. 471. (c)  In order, however, that there may be no question as to the subsequent rights of this respondent, and to the end that her position may be made clear, she now, here in this court, offers and promises upon the affirmance of the judgment in this case, rendered below, to at once execute a deed of quitclaim or such other instrument as may be required by this court, to the appellant herein, relinquishing and releasing all her claim and right to dower in the appellant's property.  (3)  This court has the unquestioned right to affirm or render such judgment as in its opinion should have been rendered by

the trial court or to remand the case with directions. The decree was for the right party. The award of alimony was not excessive. There are no children. Under the law, upon the death of the defendant, plaintiff would take one-half of the estate. The husband is fourteen years older than his wife. The case should be affirmed. R. S. 1919, sec. 1514; Helm v. Albers, 244 Mo. 38, 51; State ex rel. Dawson v. St. Louis Court of Appeals, 99 Mo. 223; Joyes v. Cale, 124 Mo. App. 575. (4) While appellate courts are not absolutely bound by the findings of fact by trial courts in divorce cases, yet when there is any conflict in the testimony and the ascertainment of the true facts depends largely upon the demeanor of the witnesses on the stand and their credibility, the appellate courts will be largely guided by the findings of the trial court. Cherry v. Cherry, 258 Mo. 391, 403; Hoecker v. Hoecker, 222 S. W. (Mo.) 387; Torlotting v. Torlotting, 82 Mo. App. 192; Borth v. Borth, 168 Mo. App. 423; Long v. Long, 171 Mo. App. 202; Albree v. Albree, 175 Mo. App. 349; Milster v. Milster, 200 Mo. App. 603. (5) The plaintiff was a competent witness in her own behalf as to the excesses of the defendant and indignities rendered to her. She was the only party in the very nature of things who could testify to such acts and communications. Maget v. Maget, 85 Mo. App. 6; Schneikert v. Schneikert, 108 Mo. App. 477; Stone v. Stone, 134 Mo. App. 246. (6) The award of the alimony was not excessive nor unreasonable. Howard v. Howard, 188 Mo. App. 567; Gercke v. Gercke, 100 Mo. 241. It was well within the boundaries prescribed in approved cases. Viertel v. Viertel, 212 Mo. 562, 575; Glover v. Glover, 192 Mo. App. 648; Wright v. Wright, 192 Mo. App. 633; Griffith v. Griffith, 190 S. W. 1021.

JAMES T. BLAIR, J.—On respondent's petition for divorce and alimony the trial court dissolved the marriage and gave judgment for $20,789.76 alimony in gross, and this appeal followed.

The marriage occurred in 1907, and the parties lived together until October 1, 1919. The petition charges, in

great detail, cruelty endangering respondent's life, indignities, and adultery on the part of the husband in 1913 and 1919. The answer admits the truth of the charge of adultery in 1913 and the contracting of "a loathsome disease" from that connection, but pleads condonation of that offense, denies the other charge of adultery, and avers that appellant treated respondent with kindness and affection.

It is unnecessary to go into detail with respect to the evidence concerning the charges of indignities and cruelty. That evidence fills much of the record and centers about the charge of excessive sexual relations enforced by mental duress. With respect to this it is enough to say that the evidence was sharply conflicting. L. B. testified that in 1919 she was employed at the Reynolds home, and appellant on several occasions seized her and had intercourse with her. Her testimony was unequivocal and was not shaken on cross-examination. At a time near the last of these instances respondent's mother, a visitor in the household, chanced to see appellant as he held the girl and was endeavoring to induce her to submit to him. This provoked inquiries by respondent which resulted in exposure of the illicit relations. The deposition of this witness, who was of foreign descent, somewhat ignorant and unfamiliar with English and court proceedings, had been taken previously, by appellant. On her direct examination by appellant's counsel on that occasion she testified frankly as to her relations with appellant. Counsel then cross-examined his witness and secured the answer upon which he relies to impeach her. The answer chiefly relied upon is one made to a bifurcated question. She had already testified in detail to her relations with appellant, and had further testified that when, on inquiry, she had told respondent of them, respondent had said "this would be the last time she would live with him and got ready and packed her things;" that respondent asked whether witness would "help her out" when she "had to go to court;" wanted her as a witness, and the girl said she told re-

spondent she would testify. Counsel asked her: "Now, then, isn't it true, L——, that Jim Reynolds never had anything to do with you, but Mrs. Reynolds and Mrs. Machen got you to say that? Isn't that true now? A. Yes, sir. Q. Mrs. Machen and Mrs. Reynolds got you to say that? A. Yes, sir. Q. And it is not true, is it? A. What Mr. Reynolds did to me; yes, sir." On cross-examination witness explained that by saying Mrs. Reynolds and Mrs. Machen told her to say this or that she did not mean they told her to tell anything except the truth, but always insisted she tell nothing else. On the trial the witness said she did not intend to give any testimony in her deposition different from her testimony on the trial. She denied she had done so. She had had but one year in school where English was taught. Appellant denied her charges. Respondent separated from appellant October 1, 1919, the day L. B. told her of appellant's conduct. The evidence shows respondent to be a woman of high character. This is not questioned. She performed her duties as a housewife at all times and frequently accompanied appellant upon his trips to his Illinois farms where his duties of supervision required his presence for considerable periods. On these occasions respondent did the housekeeping, as in their Cape Girardeau home. She wrote his letters and aided him in other ways. Appellant makes no real complaint of his wife. He is a man of considerable wealth, which will be more particularly stated and considered in connection with the question raised concerning the allowance of alimony.

I.   It was incumbent upon respondent to make out her case by a preponderance of the testimony. The trial court has found that she did so. While this court is not absolutely bound by that finding, yet this is a case of conflict of testimony of such a character that considerable deference is due the trial court. [Cherry v. Cherry, 258 Mo. l. c. 403, 404; Hoecker v. Hoecker, 222 S. W. l. c. 389.] This is true with respect to all the issues of fact in the case. The wit-

Burden:
Trial
Finding.

ness L. B. was before the court and so was appellant. There is no suggestion in the evidence that her testimony was inspired by any motive save the obligation of her oath as a witness. She was not of bad reputation. There is no evidence she had relations with others, and her testimony clearly shows that appellant's attentions were unwelcome and were resisted. If appellant is right, this girl went upon the stand and, without any motive shown or of which the evidence creates a suspicion, deliberately swore her own reputation away. The rule respecting corroboration of the evidence of a paramour is not clearly applicable to the facts of the case, is not a hard-and-fast rule (Delaney v. Delaney, 69 N. J. Eq. 1. c. 603), and is now weakened by the fact that it had its origin in considerable part from the fact, which no longer exists, that the parties were not competent to testify. In the circumstances, it cannot be held that the trial court was wrong in his finding.

II.  Complaint is made that testimony was admitted in violation of the rule protecting confidential communications.  (a)  The rulings attacked in the brief were with respect to respondent's testimony concerning appellant's enforcement of his alleged inordinate sexual desires.  Respondent was asked as to his character in this respect and replied that he was "of an intense nature" and his expectations of sexual gratification were of daily occurrence, and sometimes more frequent, when they were together.  Counsel for appellant then asked whether any one was present when "this inordinate desire was communicated to" respondent and when informed that no one was, objected that these "conversations, acts and desires" were privileged communications. Cases stating the general rule (McPheeters v. McPheeters, 227 S. W. 1. c. 873; Revercomb v. Revercomb, 222 S. W. 1. c. 905) are cited. There is in the questions and answers objected to in the brief nothing in the way of conversation unless the word "demands" necessarily implies

*Confidential Communications.*

conversation in such a connection. The argument of counsel implies that it does. If so, there never could be proof of cruelty resulting from inordinate sexual demands if the rule is as appellant contends. This has been held not to be the law (Maget v. Maget, 85 Mo. App. l. c. 11) even if appellant were right in assuming that the testimony in question necessarily involved a conversation between the parties. He is not correct in that assumption. (b) It is argued it was error to admit evidence of sexual excesses in the absence of a showing that appellant had knowledge they were injurious to respondent's health. [Maget v. Maget, 85 Mo. App. l. c. 13.] The evidence of the excesses, if any, was competent, and the question whether the appellant had knowledge of their effect was one of inference from all the facts in evidence.

III. That part of the judgment, relating to alimony, to which he objects, appellant sets out as follows:

"And it is further ordered, adjudged and decreed by the court that the defendant pay to the plaintiff by way of alimony in gross and in lieu of her inchoate dower in

Alimony. the defendant's real and personal property and estate the sum of $20,789.76, and that she be hereafter barred from setting up or claiming dower or other rights in the lands and personal property of said defendant."

Appellant insists that the court had no power under the law and the pleadings to render judgment attempting "to adjudicate and settle all questions of property rights." The cases cited are Ecton v. Tomlinson, 278 Mo. 282; Davison v. Davison, 207 Mo. 702; Fisher v. Fisher, 207 S. W. 261; Aylor v. Aylor, 186 S. W. 1068; Hasselbach v. Kleissle, 224 S. W. 75.

In Davison v. Davison dower and homestead had been assigned the widow, and the clerk included in the judgment a recitation that "the same is vested in the said Florence M. Davison during her natural life or widowhood." The court held this was wholly ineffectual since the statute fixed the duration of the interest and

left the court no power with respect to that. What the widow took as to quantity of property, she took by virtue of the assignment; and what she took as to the duration of the tenancy, she took by virtue of the statute. The property assigned by the court became hers for the statutory period by virtue of the statute, and she accepted nothing to which her right was not absolute.

In Fisher v. Fisher, it is held that the court may not decree to the wife as alimony specific personal property of the husband. In Hasselbach v. Kleissle it is-held that a decree must be within the issues. In Aylor v. Aylor the decree required the wife to release her dower as a condition of receiving the alimony granted. The court held the allowance was not excessive, even upon the assumption that the condition was void, and refused to pass upon the "propriety of such requirement."

In Ecton v. Tomlinson it was held that the court had no power to decree specific personalty to the wife as alimony, but it was also held that the acceptance of that property and an additional money allowance estopped the wife to claim dower, the release of which was made a condition of the alimony allowance in the decree. It was said in that case, in substance, that since the wife had voluntarily accepted the fruits of the void decree she would be "estopped to dispute that part which debars her of dower." The facts in that case were not exactly like those in this. The court remarked, in legal effect, that under a judgment for alimony in gross to which a release of dower was appended, the wife might accept the alimony and ignore the condition. That was said in argument only and could be conceded for the purposes of that case without affecting the conclusion, and that is the effect of what the court did say.

As was pointed out in Aylor v. Aylor, supra, appellant is not hurt by the requirement that respondent release dower in his property unless that condition is void and is worked into the allowance in such way as to render it excessive if the right to dower remains. Respondent did not appeal and does not complain of the condition

but expressly agrees to abide by it if the judgment should be affirmed. This feature, in case respondent collects the alimony allowed, is adequate to bring this case within the rule applied in Ecton v. Tomlinson, supra, whatever view may be taken of the remark in that opinion to which reference has already been made. Such a holding is also in accord with the decisions cited in that case. In Richeson v. Simmons, 47 Mo. l. c. 26, 27, it was held that the acceptance and acting under a void decree of divorce estopped the parties to claim property rights through the marriage relation. In Hamill v. Talbott, 81 Mo. App. l. c. 218, 219, the same thing was held with respect to property rights where there was a decree void for want of jurisdiction. In Minnesota a statute provided that the rights of a wife in the estate of a husband whom she divorced for his adultery should be the same as upon his death. The judgment for alimony made a different allowance at the instance of the parties and the wife accepted it. It was held she was estopped to set up her rights under the statute. [Linse v. Linse, 98 Minn. 243.] Other decisions are: Miller v. Miller, 206 Mo. 341; Williamson v. Williamson, 185 Iowa, 909, and cases cited; Heflebower v. Heflebower, 102 Ohio St. 674; Greene v. Greene, 2 Gray (Mass.) 361; Taylor v. Taylor, 240 S. W. (Ark.) 6. In view of the facts stated we are of the opinion that if, pursuant to her acceptance of the decree in full, which acceptance is tendered, respondent shall collect the amount allowed, the effect would be to release all her rights in appellant's property, or, rather, effectually to estop her from setting up any such claims.

IV. It is suggested the allowance of alimony is excessive. Counsel do not argue the question but cite decisions. This was the first marriage venture of each of the parties. Respondent was twenty-four and appellant thirty-seven years of age when the marriage occurred in 1907. They lived together twelve years. The two children of the marriage died at or near birth. Appellant had inherited valuable farm lands from his father

and brother. He owned town property to the value of nearly or quite forty thousand dollars. His net worth, excluding respondent's claims, fairly estimated, was at least ninety thousand dollars. Some of the evidence tends to show a much greater value. His income from about 616 acres of Illinois bottom lands, about three-fourths in cultivation, was considerable. He had an income of nearly $100 per month from rental property in Cape Girardeau. The residence was large and commodious and its value estimated at $20,000 to $40,000. Respondent is a woman of education and refinement. She aided her husband in the management of his farm as well as conducting the affairs of the home. She has spent with him the years from her youth until well into middle age. Her health, through no fault of hers, is not what it was. She has no property of any great consequence. She had expended considerable sums, many hundreds of dollars, on the home property. The marriage and its experiences have, in all probability, removed her from the ranks of the teaching profession in which she was engaged for a time. She has no other means of earning. Appellant is a vigorous man with a great farm at his disposal and is capable of conducting it successfully. He is not encumbered with debts of any consequence except that he anticipates the drainage taxes on his land, and advances this accumulation as an encumbrance of about $6,000. There are no children for him to support and he has no other dependents so far as the record shows. The wife's acceptance of the award will free his property entirely from her claims. Then this record shows misconduct on his part of a character which is important in passing on the question of alimony. The wife's conduct has admittedly been blameless. In view of all this, we hold that the allowance is not excessive.

The cases cited by appellant are all exceptional. In Vordick v. Vordick, 219 S. W. 591, the wife was fifty and the husband sixty-five when they married, a second venture for each. They lived together for two and one-half stormy years. Most of the husband's property was un-

productive. His income was about $2400 per annum. He had taken in their joint names property worth $12,500 in which the decree left them tenants in common. The court gave the wife $5000 more and $500 for attorney fees, and left her right to dower in valuable realty unimpaired. This right had become immediately available by the husband's death between the appeal and the submission. The amount of the wife's property did not appear. This court held that the record did not show that the amount actually in dispute exceeded $7500 and transferred the cause. The case of Lemp v. Lemp, 249 Mo. 295, is also exceptional in its facts which are so unlike those in this case that a discussion of that decision is unnecessary. Cummings v. Cummings, 50 Mich. 305, chronicles a mere sixty day amorous adventure, under legal form, between two who divorced other mates to enter upon their relations with each other. In Uecker v. Thiedt, 133 Wis. 148, the wife sued to set aside an allowance of alimony made on a stipulation of the parties. This suit was begun after the husband's death, and the allegation was that the wife was induced to enter into the stipulation by the husband's fraudulent misrepresentations as to his financial worth. The trial court sustained a demurrer. The judgment was affirmed. The remarks concerning the adequacy of the allowance are *obiter,* but could not affect this case if otherwise. The husband and wife had lived together for nine months; there were no children; the wife contributed in no way financially; there was no showing that her "situation was modified by the marriage." The allowance in the instant case is not shown to be unreasonable.

The judgment is affirmed. All concur.