Patricia Jane RICKARD, Plaintiff-Appellant,

v.

Cliff Leroy RICKARD, Defendant-Respondent.

No. 8723.

Springfield Court of Appeals.
Missouri.
May 21, 1968.

---

Ivella McWhorter Elsey, Springfield, for appellant.

Harold L. Henry, West Plains, for respondent.

TITUS, Judge.

By judgment entered March 17, 1967, the Circuit Court of Howell County awarded plaintiff a divorce, custody of the minor son born of the marriage, $100 a month child support, $1,200 attorney fees, monthly alimony of $400 and gross alimony in the sum of $20,000. Real estate, belonging to the parties as tenants by the entirety while husband and wife, was ordered partitioned as asked in Counts II and III of the petition. The court dismissed Count IV wherein plaintiff sought partition of "certain items of personal property" of which "she and the defendant are possessed." V.A.M.R. 96.60; V.A.M.S. § 528.-620. Motions of both parties for a new trial were overruled June 19, 1967. Only plaintiff filed a notice of appeal and, contrary to V.A.M.R. 82.04 and V.A.M.S. § 512.050, she erroneously appeals from the nonappealable order of June 19, 1967 overruling her motion for new trial, rather than from the judgment of March 17, 1967. Assuming plaintiff's good faith in attempting to appeal from the judgment, her appeal will not be discarded because of this infraction. In re E———, Mo.App., 416 S.W.2d 678, 679(1), and cases cited.

The decree of divorce, award of child custody, and allowance for child support and attorney fees have not been disturbed and have long since become final. Plaintiff's appeal concerns the collateral and severable orders of the court nisi dismissing Count IV of the petition, "in finding the Plaintiff entitled only to $20,000.00 gross alimony and failing to compel Defendant to give security therefor," and "in finding the Plaintiff entitled only to $400.00 per month alimony." Beckmann v. Beckmann (en Banc), 358 Mo. 1029, 1035(4), 218 S.W.2d 566, 570(12), 9 A.L.R.2d 428. In both her pleadings and testimony, plaintiff petitioned the trial court for an allowance of monthly alimony (no stated amount) and gross alimony in the sum of $250,000. She now asserts "the judgment of the trial court should be reversed and judgment entered for Plaintiff as prayed in her Amended Petition."

Neither party gives succor to the patent and most perplexing problem in this cause. Absolute apathy and acquiescence of the contestants cannot clothe us with jurisdiction nor sate our duty to determine, ex mero motu, if we possess appellate jurisdiction. Kansas City v. Howe, Mo.App., 416 S.W.2d 683, 686(2–3); Farris v. Hendrichs, Mo.App., 410 S.W.2d 97, 98(2). Unfortunately a decision on this subject requires a partial recasting of the evidence, which we attend to forthwith.

The parties wed April 3, 1942, and one child, a son, was born September 25, 1951. The sole clue we have to the ages of the parties lies in an exhibit which notes December 31, 1925, as defendant's date of birth. We only assume plaintiff is approximately the same age as defendant. From this meager evidence we calculate the parties were 16 when married and 41 when divorced. The record is barren of any indication as to the extent of formal education to which either was exposed. History related in the testimony indicates previous illness of the plaintiff, but both plaintiff and defendant were in apparent good health at the time of the hearings in this case. Defendant was working with his father in a welding shop when the parties were married, but this "wasn't too long. It was until he went into the army." About five years after the nuptials the couple went to Mam-

moth Springs, Arkansas, where they "ran the picture show" for plaintiff's father. They returned to West Plains in May 1952, and have since resided in that city. Plaintiff participated in operating "the picture show" but otherwise has been unemployed except as a housewife. There is no evidence plaintiff has ever contributed financially to any businesses in which defendant is involved or toward the purchase of any property accumulated. She testified she had no separate funds or property of her own, but declared both in her verified petition and upon the witness stand that she and defendant owned the "personal property" we shall delineate anon.

Thankfully we need not recount the record as to the alleged indignities committed by defendant which ostensibly prompted plaintiff to seek a divorce. It seems not amiss, however, to briefly observe the feebleness of plaintiff's proof is epitomized in the trial court's pronouncement prior to submission that, "As I see this right now, I've got to leave this couple where they stand without a divorce." Nevertheless, following judicial reminiscence on the testimony and a curial culling of the flood of exhibits which all but inundated the court, the divorce was granted.

Plaintiff vowed in Count IV of her petition that she and defendant were possessed of a one-third interest in a houseboat and airplane, a half interest in the Ozark Gas Company and a boat and boat motor, an interest (unspecified) in Lakeside Estates, Inc., approximately $700 worth of U. S. Savings Bonds, two automobiles, livestock, farm machinery, and "homes, household goods in residence and farm home." These items were enumerated in plaintiff's testimony in response to inquiries as to "what properties do you and your husband own?" The rule and statute governing partition of personal property (V.A.M.R. 96.60 and V.A.M.S. § 528.620) provide, "Any one or more of two or more joint owners of personal property, other than boats and vessels, may file a petition in the circuit court for a partition or a sale and partition of the proceeds thereof * * *." Thus, by pressing her claim as to Count IV in both the trial and appellate courts, plaintiff champions herself to be a joint owner with defendant of the property. But extremely inconsistent with this position is plaintiff's urging that we charge defendant with having the sole possession and ownership of these assets when we consider the amount of gross and monthly alimony to which plaintiff might be entitled.

Ownership of U. S. Savings Bonds would be governed by the laws of the United States and regulations of the United States Treasury Department. Ison v. Ison, Mo., 410 S.W.2d 65, 68(1). We find nothing in the transcript which is positive proof of the existence of any bonds or as to the actual or approximate value of such bonds, if any. The statement in plaintiff's brief that defendant, or plaintiff and defendant, owned bonds of the approximate value of $700 cannot be accepted as a substitute for record proof. Landers v. Smith, Mo.App., 379 S.W.2d 884, 887(4). Certificates of title to the two automobiles would determine the legal owner or owners thereof. The certificates were not offered in evidence and the value of the vehicles was not shown.

The "homes" alluded to by plaintiff in Count IV are explained in the record to mean the real estate owned as tenants by the entirety by the parties. These could not be subject to partition as "personal property" under Count IV, but were ordered partitioned under the second and third counts of the petition. The record value of this real estate is $31,510, subject to an indebtedness of an undisclosed amount on the residence in West Plains. If these properties sell for the values indicated, plaintiff and defendant will each receive $15,755, less whatever may be owed on the residence.

"Boats and vessels" are not subject to partition under Rule 96.60 and § 528.620, supra. Be that as it may, the one-half inter-

est in the boat and motor was valued at $750 to $1,000, while the worth of a one-third interest in the houseboat is placed at $100 to $133.33. Defendant was said to be "half owner" of a small housetrailer, but no value is given for this item. The livestock and farm machinery are valued at $13,090.

Defendant and two other men operate Chart-Air Service, the sole asset of which is a $20,000 airplane upon which they "owe $10,000 and some odd dollars." The business has never made a profit in its six or seven years of existence. At the most, a one-third net interest in this venture would be worth $3,333.33.

Ozark Translator Systems, once managed by defendant and George King, had been sold before trial for $25,000. Only $5,000 of the sale price had been paid, and this went into escrow to defray the "somewhere in [the] vicinity * * * of $9,000 owing by the corporation." Mr. King testified, "I don't know how many thousand dollars that Ozark Gas Company took out of Ozark Gas to put in the Translator System. That would have to be paid back to Ozark Gas."

Defendant was one of four shareholders of Lakeside Estates, Inc. who on March 11, 1966 contracted to sell all the issued stock to Ozark Paradise Village, Inc. for $280,000 because "we owed $100,000 which we couldn't pay on the property and taxes * * *." After the outstanding obligations were satisfied, each of the selling shareholders realized $6,879.24 from the $130,000 paid on the contract. The balance is evidenced by a $150,000 promissory note bearing 6½% interest, secured by a deed of trust, and payable in ten equal annual installments. A $15,900 payment had been made on the principal of the note, netting each payee $3,975. All told, each shareholder's receipt from this transaction had been $10,854.24 to trial time. Assuming full compliance with the terms of the note and estimating the interest the note would bear, a one-fourth interest in the note would yield approximately $4,665.50 per year for the next ten years. The only evidence regarding this instrument was that the payees had been unsuccessful in their efforts to sell the note and that it was not "marketable."

Plaintiff testified she and the defendant borrowed $5,000 from her mother "to finance the purchase of the Best Gas Company" which is "now the Ozark Gas Company." The note given for this loan was assigned by plaintiff's mother to her father, Everett Malcomb. Contrary to plaintiff's contention, Mr. Malcomb testified, "Mrs. Malcomb loaned them some money when they built their house. It had nothing to do with the business." Mr. Malcomb asserted he and George King had commenced operation of the Ozark Gas Company "about fourteen years ago" by purchasing the assets of the Best Gas Company and "my part of the business has never been conveyed to anyone." The books of Ozark Gas Company indicate it is a partnership comprised of George King and defendant. Defendant's drawings for the fiscal year ending September 30, 1965 were $28,072.01, and his capital account was stated to be $98,853.11.

One of plaintiff's witnesses appraised the partnership real estate at $53,349; Mr. King placed its value between $36,000 and $38,000. These values, contra to plaintiff's urgings, are not separate items to be added to the other figures in ascertaining defendant's worth, for the exhibits offered by plaintiff reveal real estate valued on the partnership books at $38,349 was considered in computing defendant's capital account.

Defendant did not testify, and offered no evidence. Slight variations (relatively speaking) between the figures we use and those employed in plaintiff's brief result from the fact that, contrary to the stipulation of the parties (V.A.M.R. 82.15), not all the exhibits were "filed or deposited on

or before the day the case [was] set for hearing" on appeal. We have considered only the items properly presented, and have ignored the unmarked material received which may or may not be intended as representing exhibits or copies thereof.

■ Contra to V.A.M.R. 83.05(a) (1) and (b), the jurisdictional statement in plaintiff's brief, in part, reads: "This action was instituted [by plaintiff] seeking a divorce * * *. Although the award of gross alimony exceeds the sum of * * * $15,000.00, the fact that Count IV of Plaintiff's Petition was dismissed and no division or determination of the interests of the Plaintiff and Defendant in personal properties would indicate that the Court of Appeals should have jurisdiction." No authorities are cited. We frankly admit this bizarre statement is beyond our comprehension and is "wholly insufficient" to permit us to devine why plaintiff believes we, rather than the Supreme Court, have jurisdiction. We could consider plaintiff's failure to reason appellate jurisdiction as tantamount to an invitation to infer she concedes jurisdiction is in this court because the values concerned and the amount in dispute do not exceed the sum of $15,000. Fowler v. Terminal Railroad Association, Mo., 363 S.W.2d 672, 675(6), trfd. 372 S. W.2d 497; V.A.M.S.Const. art. V, §§ 3 and 13; V.A.M.S. § 477.040. However, we do not gain jurisdiction from the probable inferences gleaned from an appellant's jurisdictional statement, "for jurisdiction is not given or lost by mere consent." Hartzler v. Metropolitan St. Ry. Co., 218 Mo. 562, 565, 117 S.W. 1124, 1125.

The term "joint owners" as used in Rule 96.60 and § 528.620, supra, "was intended to be understood in its most comprehensive sense, and to embrace all cases where the property in question is owned by two or more persons, regardless of the special nature of their relationship or how it came into being." Halferty v. Karr, 188 Mo. App. 241, 245–246, 175 S.W. 146, 147(2).

Apropos Count IV of the petition dismissed by the trial court, plaintiff pleaded and testified she and defendant "possessed" or "owned" partial interests in certain personal property. She nowhere undertook to advise if her purported claim to the property with defendant, or with the third persons involved as joint owners, was as a joint adventurer, partner, tenant by the entirety, tenant in common, or joint tenant. Moreover, there is a total dearth of evidence as to what percentage of ownership plaintiff contends she is entitled to in each item of the personal property involved.

■ "When the object of an action is not to obtain a money judgment, but some other relief, the amount in dispute is determined by the value in money of the relief sought to the plaintiff or the loss to defendant should the relief be granted or, vice versa, should the relief be denied." Jenkins v. Jenkins, Mo., 251 S.W.2d 243, 245(2), trfd. 257 S.W.2d 250. While the transcript makes it possible to compile figures as to the worth of the personal property concerned in excess of $15,000, "jurisdiction is not determined by the amount of money *involved* but instead by the amount *in dispute*." Bock v. Sheahan Investment Company, Mo., 412 S.W.2d 393, 395(3). When the record is silent as to the capacity in which plaintiff claims she is entitled to partition and as to what proportionate interest or percentage she claims to own or be entitled to in each item of property, short of pure speculation and conjecture, the value to plaintiff and the loss to defendant if partition is allowed, or vice versa if the partition be denied, cannot be said with certainty to exceed the sum of $15,000. The mere chance the amount in dispute might exceed our monetary jurisdictional limit does not oust our jurisdiction and vest jurisdiction in the Supreme Court. Seltzer v. Schroeder, Mo.App., 409 S.W.2d 777, 780(1, 2).

■ V.A.M.S.Const. art. V, § 3, does not denominate divorce per se a case in

which an appeal lies in the Supreme Court. Consequently, appeals in divorce proceedings are usually within the jurisdiction of the courts of appeal unless other questions are involved (such as the amount of alimony) which make the case reviewable in the Supreme Court. Plaintiff prayed for an allowance of "monthly alimony" with no suggestion as to the amount claimed. The record reveals plaintiff at no time in her testimony demanded any specific sum be allowed for "monthly alimony." In this appeal plaintiff simply complains the trial court erred in awarding the sum of $400 per month, but she does not say what the amount should be. We have nothing from which to infer the difference between the unknown amount of monthly alimony plaintiff opines she should have and the $400 a month awarded, exceeds the sum of $15,-000. There is nothing from which we might infer an intention on plaintiff's part to claim, as monthly alimony, a sum beyond $15,000. "For the purposes of this appeal it is enough to know that no claim for a sum within the jurisdiction of the supreme court was presented or suggested at any time * * *." State ex rel. King v. Gill, 107 Mo. 44, 50, 17 S.W. 758, 759.

■ Plaintiff prayed for a judgment in the sum of $250,000 as gross alimony. The judgment in her favor was for $20,000. A judgment for alimony is a money judgment of the same force and effect as other judgments [State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 121(9)], and when plaintiff appealed on the ground the $20,000 was inadequate, the difference between the $250,000 prayed for in her petition and the $20,000 awarded would generally be taken as the amount in dispute. Fowler v. Terminal Railroad Association, supra, 363 S.W.2d at 673–674(1). This pronouncement, however, is tempered with the fact that appellate courts reserve the right to look into the whole record to see if the amount claimed · by plaintiff is commensurate with the facts or is an amount improperly claimed or fictiously alleged. Jurisdiction of the Supreme Court may not be invoked through a paper or colorable amount in dispute concocted by the whimsical stroke of a pleader's pen. Crouch v. Tourtelot, Mo., 350 S.W.2d 799, 803(4); Cherry v. Cherry, 150 Mo.App. 414, 419, 130 S.W. 494, 496.

Ignoring for the moment the fact that plaintiff asserts some title in the assets noted above and charges defendant with the full value thereof, we are unable to arrive at a total which equals the $250,000 gross alimony plaintiff says she deserves. If, as so many times said [Carr v. Carr, Mo., 232 S.W.2d 488, 490(5)], the amount of alimony awarded is to be atuned, inter alia, to the size of the husband's resources and ability to pay, a wife's claim for gross alimony that exceeds the size of her spouse's estate and ability not only is colorable but approaches absurdity. Of course, should credence be afforded plaintiff's claim to ownership in the assets, the quantity of defendant's resources and ability would be materially reduced and the $250,000 demand would appear even more fanciful than real. The situation here has no parallel to Cherry v. Cherry, supra, 150 Mo.App. at 419, 130 S.W. at 496, where the evidence revealed the value of the husband's property "is largely in excess of [the] $50,000" gross alimony demanded by the wife, or to Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455, in which the wife asked gross alimony of $37,500 and her husband admitted he was worth $75,000. Also see: Reynolds v. Reynolds, 297 Mo. 447, 249 S.W. 407; Aylor v. Aylor, Mo., 186 S.W. 1068; Lemp v. Lemp, 249 Mo. 295, 155 S.W. 1057.

■ When a specious amount is demanded for alimony it will be ignored and makes for "a striking instance of the difficulty * * * encountered in determining from the record the amount in dispute, when jurisdictional. From the very nature of the controversy an examination of the evidence to determine the amount in

dispute involves, to some extent, a consideration of the merits * * *." Vordick v. Vordick, 281 Mo. 279, 287, 219 S.W. 591, 593. Allowance of alimony to a wife granted a divorce is not mandatory, Rutlader v. Rutlader, Mo.App., 411 S.W.2d 826, 829 (1), and for jurisdictional purposes, at least, we may not assume some certain sum of alimony is necessarily guaranteed the wife. Plaintiff here has been awarded gross alimony of $20,000, monthly alimony in the sum of $400, and $100 a month for child support. These sums, for jurisdictional purposes, are not in dispute.

The wife in Baer v. Baer, 364 Mo. 1214 (banc), 274 S.W.2d 298, had asked for $75,000 gross alimony, and appealed because the trial court awarded $6,000 payable at the rate of $500 per month and thereafter the sum of $400 per month for alimony while she remained unmarried. The gross alimony demanded in Baer was not a colorable figure, and the court said, 364 Mo. at l. c. 1219–1221, 274 S.W.2d at l. c. 302–303(4–7): "* * * jurisdiction in this case (on appellant's theory) turns on whether the amount claimed by appellant exceeds by more than $7,500 [$15,000] the value in money of the relief granted by the judgment of the trial court. * * * The question is as to the money value of the *relief* sought, which is the difference in money value between the amount demanded and the judgment obtained. * * While the judgment [as to the $400 monthly alimony] is subject to modification * * and to termination upon the death of either party, and to termination upon appellant's remarriage, none of these things may happen until after the * * * judgment appealed from equals or exceeds the amount claimed by appellant." Based on the Mortality Tables (Vol. 42 V.A.M.S., Table 8, p. 801), the money value of the $20,000 gross alimony and $400 monthly alimony could conceivably amount to $151,760 or $195,152. The difference between the $250,000 gross alimony claimed and the possible money value of the present judgment would exceed our jurisdiction if plaintiff's demand was not a mere colorable figure. But holding, as we do, the $250,000 is colorable only on the record in this case, we cannot say the amount which plaintiff might claim without overreaching realism would affirmatively and definitely exceed by more than $15,000 the value in money of the relief granted by the judgment in the trial court. We conclude, therefore, the amounts in dispute in this action, whether considered collectively or individually, do not definitely and affirmatively appear to exceed our jurisdiction. Ergo, we proceed to meet the merits.

■ The rule and statute governing partition of personal property provide suits therefor may be instituted in the same manner as suits for "the partition and sale of real estate, and like proceedings shall be had thereunder, as near as may be, as provided in cases for the partition of real estate." V.A.M.R. 96.06 requires "Every person having any interest in premises involved in an action for partition, whether in possession or otherwise, shall be made a party to such action." This is held to mean that all persons having an interest in the property are necessary parties to the action [Keller v. Keller, 338 Mo. 731, 743, 92 S.W.2d 157, 163(13)], and if the trial court in adjudging partition permits omission of interested parties, the judgment of partition is to be reversed and remanded upon appeal. Carson v. Hecke, 282 Mo. 580, 591, 222 S.W. 850, 853(5). Plaintiff's pleadings and evidence are to the effect that each major property in which she claims joint ownership with defendant also involved third persons who asserted some interest in the same items and who were not made parties to the cause. If partition had been ordered it could not stand upon appeal, and the absence of necessary parties in the action would prevent us from adjudging partition as plaintiff asks.

■ It is our function in an appeal from a judgment in a court-tried case to make our own findings of fact and con-

clusions of law, mindful, nevertheless, the judgment of the trial court "shall not be set aside unless clearly erroneous." V.A. M.R. 73.01(d); Wynn v. McMahon Ford Company, Mo.App., 414 S.W.2d 330, 335 (4). Plaintiff had the burden of proving her interest in the personal property she asked partitioned, and "conclusion" is the kindest appellation we can append to her testimony in this regard. While it may have been proper for plaintiff to testify to the conclusion that she and defendant owned the property [cf. State v. Miller, 332 Mo. 307, 309–310, 57 S.W.2d 1080, 1081(1); Strothers v. McFarland, Mo.App., 194 S.W. 881, 882–883(4, 5)], mere conclusions are not good substitutes for proof of facts, and a witness can so qualify a positive assertion with other testimony as to render it of no probative value. Zeigenbein v. Thornsberry, Mo., 401 S.W.2d 389, 393–394(5, 6). Plaintiff herself described "The Chart-Air [as being] his [defendant's] own company," and the other witnesses called by plaintiff related the composition of this concern did not include any interest belonging to plaintiff. Exhibits introduced by plaintiff revealed that the Ozark Gas Company consisted of a partnership in which only defendant and George King were partners, and that Lakeside Estates, Inc. had but four shareholders, of whom plaintiff was not one. Plaintiff's description of the other property as, for example, "A new Ford tractor and some other equipment but I am not sure what * * * Livestock * * * about fifty [head]," would make it most difficult for the court to compose a proper judgment in partition had one been indicated. We find no evidence that corroborates plaintiff's conclusion she had title in or to any of the personal property. All of the evidence, except for the conclusion, was proof to the contrary. In our opinion the trial court was correct in dismissing Count IV.

■ The "Points Relied On" in plaintiff's brief are general statements that the trial court erred in awarding her "only"

$20,000 gross alimony and $400 per month alimony. These abstractions disregard V.A.M.R. 83.05(a) (3) and (e) by failing to "show * * * wherein and why" the action of the trial court was erroneous and by not undertaking to "state why it is contended the Court was wrong." The "Argument" on these points does not relieve the defect. As we have been required to review the entire record to determine the jurisdictional issue, we will not, because of the nature of the case, enforce the rule in this instance. Biggs v. Biggs, Mo.App., 397 S.W.2d 337, 342(1).

■ Guides to the factors a court should entertain in determining whether an award of alimony should be made and, if so, in what amount, are carefully catalogued in Reeves v. Reeves, Mo.App., 399 S.W.2d 641, 650–651(14–18), and need not be repeated here. We concur with the trial court that alimony is proper in this case, but the relative conduct of the parties as bearing on their marital difficulties does not indicate the award should or could assume the punitive proportions plaintiff proposes. The character of defendant's assets attests he could not at once come by a lump sum near the size plaintiff demands for gross alimony without so embarrassing his resources that he would not be able to earn sufficiently from present sources to discharge the obligations for monthly child support and alimony. Burtrum v. Burtrum, Mo.App., 210 S.W.2d 364, 372 (8). Plaintiff would have us, on one hand, as executioners of the goose which lays the golden eggs and, on the other, as wizards conjuring monthly payments from a fiscally gelded gander. Nevertheless, exaggeration by plaintiff of her claim for alimony "is no ground for giving her less than she is entitled to, even though she is entitled to much less than she demanded." 27A C.J.S. Divorce § 236(1), p. 1090.

The testimony and exhibits in this case are voluminous, though interlaced in many important areas with hapless hiatuses. The

evidence is most meager on the subject of plaintiff's exact needs. Defendant, by the present judgment, was obligated to pay plaintiff the sum of $21,200 for gross alimony and attorney fees, and the additional sum of $6,000 per year for child support and monthly alimony. From partition of the real estate plaintiff will receive approximately $15,000 additional. Plaintiff simply says the allowances are not enough, but neglects to argue why they are not enough to satisfy her needs or permit her to live according to the station in life which she enjoyed when the decree of divorce was granted. Plaintiff may not be trained in business or profession, but this does not make her helpless, and "a divorced wife, who is capable of assisting herself, has no right to insist that her husband maintain her in idleness and luxury, simply because he has been adjudged the guilty party." Shilkett v. Shilkett, Mo.App., 285 S.W.2d 67, 70(3).

■ Since the allowance of alimony and the amount thereof are not mandatory but discretionary (V.A.M.S. §§ 452.070 and 452.080), plaintiff's appeal on the ground the amount allowed is inadequate is the same as claiming the trial court abused its discretion and entered a judgment clearly against and contrary to the facts, the logical inferences from the facts, and the circumstances before the court. Before we will be moved to interfere with the trial court's action, its abuse of discretion must affirmatively appear and its judgment must be found to be "untenable and clearly against reason which works an injustice, and not justified by the evidence." Biggs v. Biggs, supra, 397 S.W.2d at 342–343(2–5). After considering all the circumstances pertinent to the issue, we believe the awards of alimony evidence a judicial discretion soundly exercised and are commensurate with plaintiff's requirements.

■ Lastly, plaintiff urges the trial court erred in failing to compel defendant to give security for the payment of alimony. This alleged error plaintiff relates to the award of gross alimony rather than to the allowance for monthly alimony. V.A.M.S. § 452.080 permits a court "in its discretion" to decree alimony in gross or from year to year. If "alimony is decreed in gross, such decree shall be a general lien on the realty of the party against whom the decree may be rendered, as in the case of other judgments * * *. In lieu of the lien of such decree for alimony from year to year, it is hereby provided that the party against whom such decree may be rendered shall be required to give security. * * *" No alimony from year to year was decreed, and the court was not obliged by § 452.080 to require defendant to give security. The lien on defendant's realty is the security the statute affords plaintiff for the allowance of alimony in gross. If we assume plaintiff inadvertently applied the averred error to gross rather than monthly alimony, then the authority for requiring security is found in V.A.M.S. § 452.070. Whether security is to be required under § 452.070 rests within the sound discretion of the court. Defendant, according to the record, fully complied with the orders of the court in paying the pendente lite allowances. There is nothing to indicate he will not comply with the provision of the present decree or that the trial court abused its discretion in the matter. Slaughter v. Slaughter, Mo.App., 313 S.W.2d 193, 197 (6, 7).

The judgment appealed from is affirmed.

HOGAN, P. J., and STONE, J., concur.